METHODIST BENEVOLENT ASSOCIATION ET AL., RESPONDENTS, v. BANK OF SWEET SPRINGS ET AL., APPELLANTS.—54 S. W. (2d) 474.

Kansas City Court of Appeals. November 21, 1932.

*Scarritt, Jones & North, Stratton Shartel* and *Roy Weightman* for respondents.

*Donald S. Lamb* for appellants.

BOYER, C.—By an action in equity plaintiffs sought to have the court direct the administration of a charitable trust of a public nature created by will, to remove the defendant bank as disqualified trustee, to appoint a successor trustee, to require the formal transfer of corporate stock and the reissuance thereof to the new trustee, and to establish a priority demand against the assets of the Bank of Sweet Springs in the hands of the commissioner of finance. The court found the issues for the plaintiffs and found that they were entitled to the relief prayed, and granted said relief in substantial compliance with the prayer of the petition.

A portion of the decree directed that the Bank of Sweet Springs

and S. L. Cantley, commissioner of finance, pay over forthwith to th^ plaintiff, Methodist Benevolent Association, the sum of $1,104. This sum was found to be derived from dividends theretofore collected and received by said bank as a part of the trust funds, and said sum was adjudged to be a trust fund, and the assets of said bank in the hands of said Commissioner were impressed with a trust to the extent o^ that sum, and the claim therefor was allowed as a preferred demand in favor of the Methodist Benevolent Association, the newly appointe^1 trustee. The allowance of this claim in the manner stated is the only part of the decree brought in question by this appeal which is prosecuted by the commissioner of finance in charge of the assets of the Bank of Sweet Springs.

The contentions made on appeal comprise two principal points. (1) That the court erred in holding that the Bank of Sweet Springs was trustee of the funds in question; and (2) that the court had no jurisdiction and erred in allowing a preferred claim in this proceeding because the petition did not allege and the evidence does not show that a claim had been filed with the commissioner of finance prior to the institution of the suit in accordance with Section 5337, Revised Statutes of Missouri 1929.

There is no material controversy over the evidence. The divergence of the parties is occasioned by their respective views of the effect of the evidence. The substantive facts alleged and proved show the following circumstances. Mary D. Smith, a resident of Saline County, departed this life in January, 1912. Her last will was duly established in the probate court of said county and the paragraph of said will which is material to this proceeding is in these words:

"Item 3rd. It is my will and desire and I do hereby direct that my bank stock known as the St. Louis bank stock, being stock of the Laclede National Bank, be delivered to the Cashier of the Sweet Springs Savings Bank in Saline County, Missouri, in trust for the widows and orphans of and worn-out ministers of the Southwest Conference of Missouri of the Methodist Episcopal Church South, said stock to be held in trust for said widows, orphans and worn-out ministers and the annual dividend derived therefrom to be annually paid to said Conference for said widows, orphans and worn-out ministers, and to be by said conference paid to and given to said widows, orphans and worn-out ministers."

The will in question bears the date of May 27, 1911.

Louis King was cashier of the Bank of Sweet Springs and testified that the will was made long before the testatrix ever knew him. The evidence shows and it appears to be conceded that the only bank stock owned by the decedent was evidenced by a certificate for sixteen shares of the capital stock of the Merchants-Laclede National Bank of St. Louis. The testimony of the cashier of the Bank of Sweet Springs in-

dicates that this certificate of stock was delivered to him in the process of administration; that it was sent to the Merchants-Laclede National Bank with a request that it be cancelled and a new certificate issued in lieu thereof in the name of the Bank of Sweet Springs as trustee under the will of Mary D. Smith. The new certificate was issued as requested. Subsequently thereto the Merchants-Laclede National Bank was merged with the Mississippi Valley Trust Company with the exception that certain assets of the former were withheld and retained by a newly formed corporation in the name of Merchants-Laclede Securities Company for the benefit of the stockholders of the Merchants-Laclede National Bank. After these events, and upon request from the St. Louis companies, the certificate for sixteen shares of stock in the Merchants-Laclede National Bank was returned to them and in lieu thereof the Mississippi Valley Trust Company issued its certificate for sixteen full paid shares of $100 each of its capital stock to the "Bank of Sweet Springs, Mo. Tr. U-W of Mary D. Smith." The Merchants-Laclede Securities Company issued a certificate for sixteen shares of its stock of the par value of one dollar each, and it appears that the intention was to issue said certificate to the Bank of Sweet Springs as trustee. The caption and a part of said certificate is the following:

"MERCHANTS-LACLEDE SECURITIES COMPANY
"Incorporated Under the Laws of the State of Missouri.
"—Bank of Sweet Springs, Missouri.
"This is to certify that Trustee under will Mary D. Smith is the owner of Sixteen fully paid and non-assessable shares of the par value of $1.00 each of the capital stock of Merchants-Laclede Securities Company, . . ."

The transactions relative to the issuance and reissuance of stock are shown in part by the testimony of the cashier on cross-examination as follows:

"Q. You were cashier of the bank at the time and you got that certificate and then you sent that certificate down to the Merchants-Laclede Bank of St. Louis and they issued another certificate for the same number of shares—sixteen shares, in lieu of the one that you sent? A. Say that over again.

"Q. I say, in the settlement of the estate— A. (interrupting) Oh, yes.

"Q. You being cashier of the bank, and as cashier of the bank, receipted for a certificate of sixteen shares of stock, didn't you? A. Yes, sir.

"Q. Then you took that certificate, as cashier of the bank, and sent it down to the Laclede National and told them to cancel that and issue another certificate in the place of it? A. Yes, sir.

"Q. And you told them how to issue it, didn't you? A. Yes, sir.

570

"Q. And they did issue it? A. Yes, sir.

"Q. Then that was retained in the bank office there and these accounts were kept a part of the bank records? A. Yes, sir, on the individual ledgers.

"Q. I am referring to these accounts in evidence. A. Yes, sir.

"Q. And then when the Laclede National Bank went out of business—nominally, at least, by consolidation or otherwise, you sent that same certificate down at their request and they issued the two certificates now in evidence in lieu of that other, didn't they? A. Yes, sir.

"Q. And they issued it exactly to the same party that the former certificate was issued in?

"MR. LAMM: Well, we object to that; the best evidence would be the certificates themselves.

"MR. SCARRITT: They are canceled and gone.

"THE COURT: Well, if you object to all of this— A. Yes, sir, these were issued the way they are marked."

The two certificates of stock last mentioned and described were found in the Bank of Sweet Springs by the commissioner of finance or his special deputy when he took charge of said bank after it closed its doors on November 12, 1931. They were not claimed as assets of the bank and the decree directed that they be delivered to the successor trustee. On the back of the certificate issued by Merchants-Laclede Securities Company the following penciled memoranda appear:

"$240.00 or 15% Div. Received 11-1-29.
240.00 or 15% Div. Received 12-15-29.
160.00 or 10% Div. Received 1-16-30.
80.00 or 5% Div. Received 3-3-30.
80.00 or .5% Div. Received 4-2-30.
96.00 or 6% Div. Received 6-1-30.
64.00 or 4% Div. Received 1-13-31.
48.00 or 3% Div. Received 10-1-31."

With the certificates of stock the Commissioner also found eight bank certificates, each purporting to be a certificate of time deposit for a stated number of months to draw four per cent interest; and each corresponding in date and amount with one of the eight items of credit, or of receipts, indicated on the back of the stock certificate issued by the Merchants-Laclede Securities Company. For instance, the first of said certificates is dated November 1, 1929, and recites:

"This certifies that Louis King, Cashier of Bank of Sweet Springs, Trustee under will of Mary D. Smith, has deposited in this Bank two hundred forty dollars ($240.00) payable to the order of self or his successor, as Trustee in current funds on the return of this Certificate properly endorsed 12 months after date, with 4 per cent interest per annum. No interest after maturity. Not subject to check. Louis King, Cashier."

The other certificates of deposit are of like effect, varying only in date and amount and are signed "G. W. Weber, A. C." and "G. W. Weber, A. Cashier." All of the money represented by these certificates of deposit was placed in the Bank of Sweet Springs and passed into its general assets the same as any other deposit. The cashier was a witness, but it does not appear from his testimony or elsewhere in the record that he or anyone for him claimed that he was entitled to the possession of the said certificates of deposit as trustee or otherwise.

It appears that the bank maintained upon its books an account of income derived from the trust property and the disposition thereof. Two sheets from the ledger of the bank containing said account were offered in evidence by counsel for the Commissioner. The first sheet bears the following title:

"BANK OF SWEET SPRINGS, Sweet Springs, Missouri.
"Sheet No. 1.                                      Acct. No. 113.
"Name: Louis King, Church Acct.          Address:    31."

This account extends from January 2, 1912 to April 8, 1926, following which are notations made in March and April, 1930, which indicate a balancing of that account. The second sheet of the ledger offered in evidence bears the following title:

"BANK OF SWEET SPRINGS, Sweet Springs, Mo.
"Sheet No. 2                                      Acct. No. 31
"Name: Louis King Ch Acct  Address_____
"(Memoranda written in pencil) Board of Finance M E. C South C. E. Davis—Neosho Mo  Remit July 1-Jan 1  Bank of Sweet Springs Trustee Mary D. Smith."

This account contains entries from June 7, 1926 to and including October 1, 1931, and shows a balance of $96 due the trust estate. The receipts in these accounts were derived from the certificates of stock issued by the Mississippi Valley Trust Company or from the preceding certificate of stock. The amount of $96 in the account and the total amount of time certificates constitute the sum of $1,104. This money was all derived from the trust estate and passed into the current assets of the bank and so remained at the time the bank failed. An account of the receipts from the Mississippi Valley Trust Company was kept on the individual ledger and the other receipts were placed on time deposit as shown above. We quote the following question by the court and the answer:

"By the Court: Q. They came in through your general account? A. No, the dividend checks was a check from the Mississippi Valley Trust Company with the Bank of Sweet Springs as trustee; we put them to this account and remitted it wherever it would go, and what come from the Merchants-Laclede Securities Company we deposited on time deposit, . . ."

The bank failed November 12, 1931; this proceeding was instituted January 23, 1932, and the case was heard and determined March 21,

1932. It is admitted that no claim was filed with the commissioner of finance prior to the institution of suit and that the only proceeding brought is the pending action. It was shown that at the time the bank closed there was on hand about $2,700 in cash; deposits in other banks amounted to about $2,850, and paper assets amounting at face value to about $200,000 were on hand. The actual worth of paper assets was not shown except by the testimony of the special deputy commissioner in charge who gave his opinion that they were of very little value. There was no showing as to the amount of other preferred demands, if any, and at the date of trial the time for filing demands and suits for preferences had not expired. Other facts which may be deemed pertinent to points raised on appeal will be referred to in the course of the opinion.

It is contended by appellants that the Bank of Sweet Springs was not the trustee named in the will and that by the express terms of the will the "cashier" of said bank was the nominated trustee and acted as such. The argument in support of this proposition proceeds upon the theory that the cashier, being the trustee, was in lawful possession of the funds and property of the trust; that he had a legal right to deposit said funds in the bank; that amounts received from the Merchants-Laclede Securities Company were not dividends but were a part of the *corpus* of the estate and in the absence of bad faith on his part he had the right to make time deposits of said funds and accept certificates from the bank therefor; and if a claim exists in behalf of plaintiffs it is a common claim and not preferred. The argument is not convincing and the point must be ruled against appellants First, because the bank by its own acts and conduct assumed a fiduciary relationship in reference to the trust property and became a trustee *ex maleficio*, if it was not in fact the trustee expressly named in the will. Further, we think the evidence is sufficient upon which to base a finding that the intent of the testatrix was to have the bank, through its cashier, act as the trustee instead of the individual who might at a given time occupy the office of cashier of said bank. According to the testimony of the cashier the will was made long before the testatrix knew him. Evidently she did not have this individual in mind. However, it is unnecessary to determine the intent of the testatrix upon the subject for the purpose of disposing of the contested matter in this case. The sole question is whether the assets of the failed bank are subject to the preferred demand allowed in this case under the circumstances shown in evidence. We think it fairly deducible from the record that the cashier of the bank did not act in reference to this trust in his own behalf, but acted for and in behalf of the bank and that the bank at all times through its officers and agents assumed to act and did act as trustee of the trust created by the will of Mary D. Smith. At the instance of its agents the original

certificate of bank stock held bp the testatrix was reissued to the "Bank of Sweet Springs trustee, under the will of Mary D. Smith" and when this certificate was exchanged for new certificates they were issued in like manner. All evidence of the property belonging to this trust and all income or receipts of money belonging to said trust funds were at all times in the custody and possession of the bank. The last page of the bank account in which the funds were kept bore the notation "Bank of Sweet Springs Trustee Mary D. Smith." All receipts appear to have been transmitted to a representative of the beneficiaries of the trust except $96 in this account and the total sum of $1,008 represented by certificates of time deposit which the cashier of the bank issued or had issued payable to himself. The amount represented by the time certificates of deposit was money received from the Merchants-Laclede Securities Company, and the cashier claimed that he "understood" that said money represented a part of the capital of the trust fund instead of dividends and for that reason retained it and, in the absence of direction by the will, deposited it in the bank on time certificates. When this money was received we think it was received by the bank and not by the cashier in his individual capacity. All of the sums so received are noted as dividends on the back of the stock certificate which yielded them. All of the money went into the bank and was mingled with its other assets and it is wholly immaterial whether this money technically represented dividends or whether it was a part of the *corpus* of the estate. The bank received it and held it only as a trustee would hold other like funds. It acquired no right or title to the money which belonged to the beneficiaries of the trust just the same as the other assets of that trust.

The principles of equity upon which trust funds may be traced into and recovered from the assets of failed banks have been many times expounded and the applicable rule pronounced. "Missouri follows the rule that, if a trust fund is proved to have been deposited in a mass, and wrongfully and illegally mingled therewith, even though indistinguishable, it may be recovered and taken from the estate of the insolvent, on the ground that it went into, increased and swelled the volume of the insolvent's assets, and it is chargeable against the insolvent estate to the amount of the converted fund as a preferred demand." [State ex rel. Attorney-General v. Page Bank, 322 Mo. 1. c. 36.] The facts in this case bring it within the rule stated. The funds sought to be recovered were trust funds wrongfully appropriated by the bank and said funds augmented the assets of the bank which passed to the commissioner of finance. The bank had no right to the money and the right of the Commissioner could not be superior to the right of the bank. On that state of facts the money could properly be recovered as a preferred demand.

574

But appellants contend further that even though the claim is of a preferred nature plaintiffs did not proceed according to Section 5337, Revised Statutes of Missouri 1929. The point made is that the court had no right or power to adjudge a preferential demand in this equitable proceeding without a claim having been previously filed with the Commissioner. The section of the statute referred to provides in part:

"When the time within which the commissioner is required to approve or reject claims has expired and at any time within six months thereafter, a claimant whose claim has been duly filed and has not been approved by the commissioner may institute and maintain an action thereon against such corporation or banker. No action shall be maintained against such corporation or banker while the commissioner is in possession of its affairs and business unless brought within the period of limitation specified in this section. In all actions or proceedings instituted against such corporation or banker while the commissioner is in possession of its property and business, the plaintiff shall be required to allege and prove that the claim upon which the action is instituted was duly filed and that sixty days have elapsed since the expiration of time for filing said claims and that said claim has not been approved."

The petition in the case at bar does not allege that a claim for the preference sought was filed with the Commissioner, and it was admitted that no such claim was filed and that no action was taken other than the institution of the pending suit. However, the petition was filed before the expiration of the time for filing claims with the Commissioner as well as before the expiration of the time for filing suits, and likewise, of course, before the time to authorize any distribution of assets had arrived. The defendant bank, the Commissioner, and special deputy commissioner in charge of the bank waived personal service of summons and entered their voluntary appearance in the cause and the other defendants entered their appearance. All defendants thereby evidenced a desire to avoid delay and expense occasioned by useless formalities and a desire for expeditious procedure. Consequently the case was tried and determined before the time had elapsed for the assertion of priority demands.

There has been a divergence of opinion in the appellate courts of this State as to whether the foregoing section of the statute applies to a procedure for the recovery of trust funds. The St. Louis Court of Appeals has held that it does apply to all claims. [Bowersock Mills & Power Co. v. Citizens' Trust Co., 298 S. W. 1049.] And this court has held that it does not apply to an action for the recovery of trust funds. [Commerce Trust Co. v. Farmers' Exchange Bank In Liquidation, 52 S. W. (2d) 406.] The latter case has been certified to the Supreme Court for determination of the conflict where it is now

pending. There is much in the present case to distinguish it from both of the cases above mentioned. In the first place, this is an independent action invoking the plenary powers of equity jurisdiction to establish a trust, remove a trustee, obtain the appointment of a new trustee, and for directory orders to conserve the *corpus* of a trust estate and to mold its administration; and incidentally to establish a priority demand for a part of the trust estate in the custody of the commissioner of finance. It appears to be agreed that equity jurisdiction has been properly invoked over all parties and the entire subject-matter except the subject of a preferred claim. In the present case none of the plaintiffs or relators asserts any right as a matter of law to the fund in question. They appear in a representative capacity and in the interest of a charitable trust of a public nature. There was no competent trustee at the time the suit was instituted, or at any time after the failure of the bank, qualified to file a claim until after this suit was tried and a trustee appointed. The case was voluntarily submitted to the court. There was no plea of limitation or of abatement contained in the answer of the bank and of the Commissioner, and there was no objection during the trial that the court was improperly hearing the claim for preference, and this claim was the mainly controverted subject in the case. The court was properly vested with jurisdiction of the whole subject-matter and of all the parties to the action and possessed the power to adjudge and determine not only a part of the issues but all the rights of the parties *inter sese* according to the equities of the case. When a court of equity is once possessed of a cause it will proceed to dispose of all issues raised in said cause and to administer complete justice to all the parties. [Waddle v. Frazier, 245 Mo. 391. 403; Hurst Automatic Switch & Signal Co. v. Trust Co., 291 Mo. 54, 68, 236 S. W. 8; McGowan v. Parish, 237 U. S. 285, 59 L. Ed. 955, 21 C. J., pages 134, 138.] The generally accepted rule just stated should be applied to the case in hand. It is manifestly just to do so under the particular facts in evidence.

It is our opinion as heretofore expressed in Commerce Trust Co. v. Farmers' Exchange Bank In Liquidation, supra, that the sections of the statute applicable to the filing of claims (5333 to 5337) do not apply to a proceeding to recover trust funds. However, the ruling in this case need not be placed upon that ground. We are justified in placing it upon the ground of revealed equities, on the accepted practice in equity, and on the further ground that there has been a substantial compliance with the statute in reference to filing claims if the statute applies. And further, that under the circumstances of time, appearance, and trial appellants waived the necessity of a formal presentation of the claim to the Commissioner prior to suit. The purpose of filing a claim with the Commissioner is to notify him of its

existence within a stated time, to avoid delay and gain speed in the settlement of claims, and in the administration. In this case the suit was filed within the time specified for the filing of claims. The Commissioner was notified thereof, waived summons and entered his voluntary appearance. We think that he thereby waived the filing of the claim with him prior to suit. There was no demurrer to the petition, no plea in abatement, and no move to stay a hearing upon the claim. If appellants had so moved the new trustee appointed by the court could have filed a claim with the Commissioner in time and reinstituted a suit upon the claim which would have brought the matter to the attention of the very tribunal already possessed of the cause. This circumlocution could have had no effect whatever upon the rights of any party in interest. The Commissioner had no power to determine priorities and could only refer that question to the court. [Sec. 5336, R. S. Mo. 1929.] Under the circumstances the filing of a claim would have been entirely useless. Neither law nor equity requires the performance of a useless or futile act. What we have said is in accord with the discussion of a very similar subject in Bartlett v. McCallister, 316 Mo. 1. c. 136 et seq. It is entirely fair and just to all parties to treat this case as properly entertained and adjudged. The parties had their day in court. It would be a gross injustice to deny the claim on the proposed technical ground and thereby give form precedence over substance, and sacrifice the equities of the case on the altar of vain formality. It is now too late to file another claim.

There is one feature of the decree, however, which does not meet our approval and that is the time and method of payment which it commands. It is ordered and decreed "that the said defendants Bank of Sweet Springs and S. L. Cantley, Commissioner, forthwith pay over to the plaintiff Methodist Benevolent Association the sum of One Thousand One Hundred and Four Dollars." The court was correct in allowing said sum as a preferred demand, but the order to pay "forthwith" might result in this claim being preferred over other like claims as well as over the general claims against the bank. Sufficient assets reached the hands of the Commissioner to pay this claim, but at the time of trial the amount of other priority claims were unknown. The time for filing them had not expired, the value of the assets of the bank had not been ascertained, and the time for distribution of assets had not arrived. Under such circumstances we think that an order for immediate payment was premature and that the order upon the preferred demand should have been that it be paid in the same manner as other preferred demands and in the regular course of administration by the Commissioner. The allowed claim should have been placed upon an equality with other like claims. The order of payment should be modified accordingly and the judgment so modified should be affirmed. The Commissioner so recommends. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The order for the payment of the claim is modified in accordance with the opinion and the judgment so modified is affirmed. All concur.