TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

----------------------------
                                        :
OPINION                                 :
                                        :
of                                      :        No. 87-204
                                        :
JOHN K. VAN DE KAMP                     :        MARCH 9, 1988
Attorney General                        :
                                        :
ANTHONY S. DaVIGO                       :
Deputy Attorney General                 :
                                        :
-----------------------------------------------------------


THE STATE TEACHERS RETIREMENT SYSTEM has requested an opinion on the following question:

Should interest earned on the investment of the outstanding balance of warrants drawn against the State Teachers Retirement Fund be credited to that Fund or to the General Fund?

CONCLUSION

Interest earned on the investment of the outstanding balance of warrants drawn against the State Teachers Retirement Fund should be credited to that Fund.

ANALYSIS

There are, in the custody of the State Treasurer, certain assets consisting of the amounts which have been drawn by the State Controller against the Teachers' Retirement Fund (TRF), the warrants for which have not been presented for payment. The amount of each warrant drawn on TRF is transferred from that account to the Outstanding Warrants Account until the warrant is cashed. The balance in this account, consisting of all disbursements remaining uncashed for a period from one day to four years, is invested daily by the State Treasurer as part of the State's Pooled Money Investment Account. The present inquiry is whether the interest earned on the investment of this outstanding warrant balance should be credited to TRF or to the General Fund.

TRF is a special trust fund created and administered solely in the interest of the members, retirants, and beneficiaries of the State Teachers' Retirement System (STRS). (§§ 22225.5; 22300.)[1] Pertinent provisions of the State Teachers' Retirement Law (§ 22000 et seq.) are set forth as follows:

"§ 22224.

"The board has exclusive control of the administration of the funds. No transfers or disbursements of any amount from the funds shall be made except upon the authorization of the board for the purpose of carrying into effect the provisions of this part."

"§ 22300.

"There is in the State Treasury a special trust fund to be known as the Teachers' Retirement Fund.[2] There shall be deposited in that fund the assets of the system and its predecessors, consisting of employee contributions, employer contributions, state contributions, appropriations made to it by the Legislature, income on investments, other interest income, income from fees and penalties, donations, legacies, bequests made to it and accepted by the board and any other amounts provided by this part.

"Disbursement of money from the Teachers' Retirement Fund of whatever nature shall be made upon claims duly audited in the manner prescribed for the disbursement of other public funds except that notwithstanding the foregoing disbursements may be made to return funds deposited in the fund in error." (Emphasis added.)

---

[1]Unidentified statutory citations are to the Education Code.

[2]Section 22309 (Stats. 1986, ch. 900, § 1) provides:

"Notwithstanding any other provision of law, the board may retain a bank or trust company to serve as custodian for safekeeping, delivery, securities valuation, investment performance reporting, and other services in connection with investment of the Teachers' Retirement Fund."

"§ 22301.

"Return on investments shall be collected by the State Treasurer, and together with any other moneys received for the Teachers' Retirement Fund shall be immediately deposited to the credit of that fund and reported forthwith to the system. Money in whatever form received directly by the system shall be deposited forthwith in the State Treasury to the credit of that fund."  (Emphases added.)

Under these provisions of the State Teachers' Retirement Law, as expressly indicated in sections 22300 and 22301, interest earned on investments or other interest income must be immediately deposited to the credit of TRF.

We next consider a separate and distinct statutory scheme pursuant to which, in 1949, the centralized State Treasury System was established in order to realize the maximum return consistent with safe and prudent treasury management.  (Stats. 1949, ch. 1534; § 16305 et seq.) Pertinent provisions of the Government Code are set forth as follows:

Section 16305.2:

"All money in the possession of or collected by any state agency or department is subject to the provisions of Sections 16305.3 to 16305.7, inclusive, and is hereafter referred to as state money."

Section 16305.3:

"All state money shall be deposited in trust in the custody of the Treasurer, . . . All state money deposited in trust in the custody of the Treasurer shall be held in a trust account or accounts and may be withdrawn only upon the order of the depositing agency or its disbursing officer. . . ."

Section 16305.5:

"Money in treasury trust accounts shall be deposited, invested and reinvested in the same manner and to the same extent as if the money in trust accounts were money in the State Treasury."

Section 16305.7:

"Any increment collected as the result of investment of state money shall be collected by the State Treasurer and reported by him to the State Controller for credit to the General Fund in the State Treasury."  (Emphases added.)

From the foregoing it is clear, as expressly set forth in section 16305.7, that any increment collected by the State Treasurer as the result of investment of state money deposited in trust in his custody must be credited to the General Fund.[3]

We are faced with the unequivocal though inconsistent provisions respectively of Government Code section 16305.7 pertaining to "state money" and sections 22300 and 22301 relating to the retirement fund. We resort to familiar rules of statutory construction. It must first be recognized that for nearly four decades since its enactment, Government Code section 16305.7 has been understood and administratively applied without regard to sections 22300 and 22301. An administrative application of the language of a statute is entitled to respect, and unless clearly erroneous is a significant factor to be considered in the determination of legislative intent. (Klarfeld v. State of California (1983) 142 Cal.App.3d 541, 548; 67 Ops.Cal.Atty.Gen. 325, 329 (1984).) Conversely, an administrative interpretation which is erroneous or contrary to law will be disregarded. (Douglas Aircraft Co. v. Cal. Unemp. Ins. App. Bd. (1960) 180 Cal.App.2d 636, 642.)

On the other hand, the following rules applicable in the event of an ostensible conflict between two state statutes were summarized in American Friends Service Com. v. Procunier (1973) 33 Cal.App.3d 252, 263, as follows:

"The applicable rule of construction in such an instance has been described by the Supreme Court in the following manner: "'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication." (People v. Breyer, 139 Cal.App. 547, 550; Riley v. Forbes, 193 Cal. 740, 745.)' (In re Williamson (1954) 43 Cal.2d 651, 654.) More recently the court has expressed the same rule in somewhat different language: 'Also of importance here is the rule that where the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special one, whether or not enacted first, is an exception to the general statute and controls unless an intent to the contrary clearly appears.' (Warne v. Harkness (1963) 60 Cal.2d 579, 588; see also Lacy v. Orr (1969) 276 Cal.App.2d 198, 201-202, and cases cited therein, holding that the general adjudicatory hearing provisions of the Administrative Procedure Act yield to certain special adjudicatory hearing procedures of the Vehicle Code relating to drivers' licenses.) A more accurate 'harmonizing' of the two acts results, in our view, from treating the special act as an exception to the general."

---

[3]The General Fund consists of money received into the treasury and not required by law to be credited to any other fund. (Gov. Code, § 16300.)

(And see 66 Ops.Cal.Atty.Gen. 73, 78 (1983).)

Government Code section 16305.7 (enacted by Stats. 1949, ch. 1534, § 8, and never amended) pertains generally to "state money," i.e., all money possessed or collected by any state agency. (Gov. Code, § 16305.2.) Section 22300 (enacted by Stats. 1969, ch. 896, § 2; amended by Stats. 1974, ch. 795, § 4), and section 22301 (enacted by Stats. 1969, ch. 896, § 2; amended by Stats. 1971, ch. 407, § 14, and Stats. 1974, ch. 795, § 9) pertain specifically to the retirement fund. Thus, sections 22300 and 22301 being later in time and specific, must be viewed as an exception to Government Code section 16305.7.

Moreover, if the term "state money," consisting of "[a]ll money in the possession of . . . any state agency" (Gov. Code, § 16305.2), is literally construed, it would include TRF money, and any interest on the investment of the entire principal, as distinguished from the balance of outstanding warrants, would be creditable to the General Fund. Hence, the reference in Government Code section 16305.7 to "[a]ny increment collected as the result of investment of state money" has never been deemed to include interest on TRF investments. Nor do we perceive any inherent significance of a warrant being issued against TRF, prior to its presentation for payment. Aside from the constitutional impediment, which is discussed below, we have not been apprised of any statutory basis for the transfer of funds from TRF to any other account prior to presentation of the warrant.

In any event, a constitutional dimension appears which, in our view, is dispositive. In this regard, the assets of a public pension or retirement system are constitutionally designated as trust funds for exclusive purposes, and may not be deemed or treated otherwise by statute. Specifically, California Constitution, article XVI, section 17, provides in pertinent part as follows:

"Notwithstanding provisions to the contrary in this section and Section 6 of Article XVI, the Legislature may authorize the investment of moneys of any public pension or retirement system, subject to all of the following:

"(a) The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system.

"(c) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims.

"(d) The fiduciary of the public pension or retirement system shall diversify the investments of the system so as to minimize the risk of loss and to maximize the rate of return, unless under the circumstances it is clearly prudent not to do so."

Inasmuch as such assets constitute a trust for exclusive purposes, they may not be appropriated for general fund uses. As stated by the court in Valdes v. Cory (1983) 139 Cal.App.3d 773, 788 - concerning the Public Employees Retirement System:

"Once paid, appropriated employer contributions constitute a trust fund held solely for the benefit of PERS members and beneficiaries (§ 20200). Income in excess of interest credited to employee and employer accounts is to be retained in that trust fund as a reserve against deficiencies. The reserve constitutes an integral part of that trust fund. (§ 20203.) Consequently, none of the funds within PERS including those in the reserve against deficiencies, may be appropriated for a general public purpose unrelated to the benefit of PERS members (Gillum v. Johnson (1936) 7 Cal.2d 744), because funds received into the treasury for special trust purposes are 'in their nature a continuing appropriation for a specific purpose' (p. 758; Daugherty v. Riley (1934) 1 Cal.2d 298, 308).

"Had the Legislature actually appropriated any of the PERS trust funds for purposes unrelated to the benefit of PERS members, e.g., to balance the state budget and avoid a year-end deficit, we would have no difficulty in concluding that such legislative action modified vested rights of PERS members. (See Sgaglione v. Levitt, supra, 337 N.E.2d 592; State Teachers' Retirement Board v. Giessel, supra, 106 N.W.2d 301; cf. Whitmire v. City of Eureka (1972) 29 Cal.App.3d 28, 34.)"

Is interest derived from the investment of the outstanding warrant balance an asset of the trust for purposes of California Constitution, article XVI, section 17, supra? We conclude that it is. At common law the proceeds of an investment are an accretion or increment to the principal earning it, and unless lawfully separated therefrom becomes a part thereof. (Pomona City School Dist. v. Payne (1935) 9 Cal.App.2d 510, 516.) Since proceeds, including interest and dividends, become part of the principal, they are subject to the same restrictions. (See 65 Ops.Cal.Atty.Gen. 588 (1982).)

In Provident Land Corp. v. Zumwalt (1938) 12 Cal.2d 365, an irrigation district had acquired certain land to be held "in trust for . . . and set apart to the uses and purposes set forth in [the California Irrigation District Act]." (Id. at 374.) The court held that while no provision had been made for the disposition of the proceeds of the land, such proceeds, over and above operating expenses, remain subject to the trust. (Id. at 376-377.) The court stated in part (id. at 375):

"Once it is made clear that the lands are held in trust, it necessarily follows that their proceeds, whether by sale or lease, are likewise subject to the trust. It would be manifestly absurd to say that although property is held in trust, none of the benefits of the trust accrue to the beneficiaries, and that none of the rents or profits of the trust property need be used in furtherance of the trust purposes. On this point, namely, that the land is trust property, held for the 'uses and purposes' of the act, and that the proceeds are stamped with the character of the property from which they flow, the statute, read in the light of elementary principles, leaves no room for debate."

In City of Long Beach v. Morse (1947) 31 Cal.2d 254, the state had granted to the city its interest in tidelands within the corporate limits "in trust for the uses and purposes" connected with the development of the municipal harbor. (Id. at 256-258.) The city proposed to divert certain revenues derived from the production of oil and gas from the tidelands to the "Public Improvement Fund" for general municipal purposes unconnected with the grant. (Id. at 255.) It was first noted that as trustee, the city assumed the same burdens and was subject to the same regulations that appertain to other trustees. (Id. at 257.) Holding that such revenues from the land could be used only in furtherance of the trust purpose (id. at 258), the court stated in part (id. at 257-258):

"The city of Long Beach contends that the proceeds from the production of oil and gas is merely income from the land and as such is not covered by any provisions of the trust, on the ground that the trust expressly applies only to the physical uses of the land. Whether the fund should be regarded as part of the corpus of the trust or merely as a part of the rents and profits of the land, the city as trustee has no right to devote the proceeds to general municipal improvements unconnected with the trust purposes. If the proceeds from the sale of oil and gas are regarded as corpus (see Rest. Trusts, § 238; Bogert, Trusts and Trustees, §§ 789, 828), they must be used for the purposes set forth in the legislative grants in trust, for the city, as trustee, clearly has no authority to appropriate the corpus to its own uses contrary to the terms of the trust. If the proceeds are regarded as income from trust property, the trustee, in the absence of a legislative provision to the contrary, has no more right to them than it has to the corpus. (Civ. Code, § 2229 [see now Probate Code, § 16004]; Provident Land Corp. v. Zumwalt, 12 Cal.2d 365, 375; Lamb v. Lamb, 171 Cal. 577, 580-582; Purdy v. Johnson, 174 Cal. 521, 529; see Methodist Benev. Assn. v. Bank of Sweet Spring, 227 Mo.App. 566, 573 [54 S.W.2d 474, 478]."

Where a trust is constitutionally established for a designated purpose, neither the principal nor its proceeds may be statutorily diverted. It is concluded, therefore, that interest earned on the investment of the outstanding balance of warrants drawn against TRF should be credited to that Fund.

\* \* \* \* \*