TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 86-1002 |
| | : | |
| of | : | MARCH 9, 1988 |
| | : | |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| Anthony S. DaVigo | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE PUBLIC EMPLOYEES RETIREMENT SYSTEM has requested an opinion on the following questions:

1.      Should interest earned on the investment of the outstanding balance of warrants drawn against the Public Employees Retirement Fund be credited to that Fund or to the General Fund?

2.      Should interest earned on the investment of income deposited in the Public Employees Retirement System's general cash account prior to its transfer to the Public Employees Retirement Fund be credited to that Fund or to the General Fund?

CONCLUSION

1.      Interest earned on the investment of the outstanding balance of warrants drawn against the Public Employees Retirement Fund should be credited to that Fund.

1

2. Interest earned on the investment of income deposited in the Public Employees Retirement System's general cash account prior to its transfer to the Public Employees Retirement Fund should be credited to that Fund.

ANALYSIS

There are, in the custody of the State Treasurer, certain assets consisting of the amounts which have been drawn by the State Controller against the Public Employees Retirement Fund (PERF), the warrants for which have not been presented for payment. The amount of each warrant drawn on PERF is transferred from that account to the Outstanding Warrants Account until the warrant is cashed. The balance in this account, consisting of all disbursements remaining uncashed for a period from one day to four years, is invested daily by the State Treasurer as part of the State's Pooled Money Investment Account. The first inquiry is whether the interest earned on the investment of this outstanding warrant balance should be credited to PERF or to the General Fund.

PERF is a special trust fund created and administered solely in the interest of the members, retirants, and beneficiaries of the Public Employees Retirement System (PERS). (§ 20200.)[1] Pertinent provisions of the Public Employees Retirement Law (§ 20000 et seq.) are set forth as follows:

Section 20201:

"The board has the exclusive control of the administration and investment of the Retirement Fund."
Section 20203:

"*Interest earned on any cash deposit in a bank by the Treasurer and income on other assets constituting a part of the fund shall be credited to the fund as received*. Income, of whatever nature, earned on the Retirement Fund during any fiscal year, in excess of the interest credited to contributions during that year shall be retained in the fund as a reserve against deficiencies in interest earned in other years, losses under investments, court-mandated costs, and actuarial losses resulting from terminations, mergers, and dissolutions of contracting agencies.

". . . . . . . . . . . . . . . . . . . . . . ." (Emphasis added.)

Section 20203.3:

"Notwithstanding any other provision of law, no funds in the retirement fund shall be expended for any purpose other than the cost of administration of the system, investments for the benefit of the system, and the provision of benefits

---

[1] Unidentified statutory citations are to the Government Code.

to the members and retired members of the system and their survivors and beneficiaries."

Section 20204:

"The board shall deposit monthly in the State treasury to the credit of the Retirement Fund all amounts received by it under this part."[2]

Under these provisions of the Retirement Law, as expressly indicated in section 20203, interest earned on any cash deposit or other assets constituting a part of the fund must be credited to the fund as received. The latter provision was first enacted in substantial form in 1931. (Stats. 1931, ch. 700, § 63.)

We next consider a separate and distinct statutory scheme pursuant to which, in 1949, the centralized State Treasury System was established in order to realize the maximum return consistent with safe and prudent treasury management. (Stats. 1949, ch. 1534; § 16305 et seq.) Pertinent provisions are set forth as follows:

Section 16305.2:

"All money in the possession of or collected by any state agency or department is subject to the provisions of Sections 16305.3 to 16305.7, inclusive, and is hereafter referred to as state money."

Section 16305.3:

"All state money shall be deposited in trust in the custody of the Treasurer, . . . All state money deposited in trust in the custody of the Treasurer shall be held in a trust account or accounts and may be withdrawn only upon the order of the depositing agency or its disbursing officer. . . ."

Section 16305.5:

"Money in treasury trust accounts shall be deposited, invested and reinvested in the same manner and to the same extent as if the money in trust accounts were money in the State Treasury."

---

[2] Section 20202 (Stats. 1986, ch. 900, § 5) provides in part:

"Notwithstanding any other provision of law, the board may retain a bank or trust company to serve as custodian for safekeeping, delivery, securities valuation, investment performance reporting, and other services in connection with investment of the Pubic Employees' Retirement Fund."

Section 16305.7:

> *"Any increment collected as the result of investment of state money shall be collected by the State Treasurer and reported by him to the State Controller for credit to the General Fund* in the State Treasury." (Emphases added.)

From the foregoing it is clear, as expressly set forth in section 16305.7, that any increment collected by the State Treasurer as the result of investment of state money deposited in trust in his custody must be credited to the General Fund.[3]

We are faced with the unequivocal though inconsistent provisions respectively of section 16305.7 pertaining to "state money" and section 20203 relating to the retirement fund. We resort to familiar rules of statutory construction. It must first be recognized that for nearly four decades since its enactment, section 16305.7 has been understood and administratively applied without regard to sections 22300 and 22301. An administrative application of the language of a statute is entitled to respect, and unless clearly erroneous is a significant factor to be considered in the determination of legislative intent. (*Klarfeld v. State of California* (1983) 142 Cal.App.3d 541, 548; 67 Ops.Cal.Atty.Gen. 325, 329 (1984).) Conversely, an administrative interpretation which is erroneous or contrary to law will be disregarded. (*Douglas Aircraft Co. v. Cal. Unemp. Ins. App. Bd.* (1960) 180 Cal.App.2d 636, 642.)

On the other hand, the following rules applicable in the event of an ostensible conflict between two state statutes were summarized in *American Friends Service Com. v. Procunier* (1973) 33 Cal.App.3d 252, 263, as follows:

> "The applicable rule of construction in such an instance has been described by the Supreme Court in the following manner: '"It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication." (*People v. Breyer*, 139 Cal.App. 547, 550; *Riley v. Forbes*, 193 Cal. 740, 745.)' (*In re Williamson* (1954) 43 Cal.2d 651, 654.) More recently the court has expressed the same rule in somewhat different language: 'Also of importance here is the rule that where the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special one, whether or not enacted first, is an exception to the general statute and controls unless an intent to the contrary clearly appears.' (*Warne v. Harkness* (1963) 60 Cal.2d 579, 588; see also *Lacy v. Orr* (1969) 276

---

[3] The General Fund consists of money received into the treasury and not required by law to be credited to any other fund. (§ 16300.)

4

Cal.App.2d 198, 201-202, and cases cited therein, holding that the general adjudicatory hearing provisions of the Administrative Procedure Act yield to certain special adjudicatory hearing procedures of the Vehicle Code relating to drivers' licenses.)  A more accurate 'harmonizing' of the two acts results, in our view, from treating the special act as an exception to the general."

(And see 66 Ops.Cal.Atty.Gen. 73, 78 (1983).)

Section 16305.7 (enacted by Stats. 1949, ch. 1534, § 8, and never amended) pertains generally to "state money," i.e., *all* money possessed or collected by *any* state agency. (§ 16305.2.)  Section 20203 (enacted by Stats. 1945, ch. 123, § 1; amended by Stats. 1949, ch. 298, § 6, Stats. 1955, ch. 1705, § 5, Stats. 1982, ch. 330, § 14; repealed and reenacted by Stats. 1982, ch. 1496, §§ 3 & 4) pertains specifically to the retirement fund.  Thus, section 20203 being later in time and specific, must be viewed as an exception to section 16305.7.

Moreover, if the term "state money," consisting of "[a]ll money in the possession of . . . any state agency" (§ 16305.2), is literally construed, it would include PERF money, and any interest on the investment of the entire principal, as distinguished from the balance of outstanding warrants, would be creditable to the General Fund.  Hence, the reference in section 16305.7 to "[a]ny increment collected as the result of investment of state money" has never been deemed to include interest on PERF investments.  Nor do we perceive any inherent significance of a warrant being issued against PERF, prior to its presentation for payment.  Aside from the constitutional impediment, which is discussed below, we have not been apprised of any statutory basis for the transfer of funds from PERF to any other account prior to presentation of the warrant.

In any event, a constitutional dimension appears which, in our view, is dispositive.  In this regard, the assets of a public pension or retirement system are constitutionally designated as trust funds for exclusive purposes, and may not be deemed or treated otherwise by statute.  Specifically, California Constitution, article XVI, section 17, provides in pertinent part as follows:

"Notwithstanding provisions to the contrary in this section and Section 6 of Article XVI, the Legislature may authorize the investment of moneys of any public pension or retirement system, subject to all of the following:

"(a) The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their

5

86-1002

beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system.

"(c) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims.

"(d) The fiduciary of the public pension or retirement system shall diversify the investments of the system so as to minimize the risk of loss and to maximize the rate of return, unless under the circumstances it is clearly prudent not to do so."

Inasmuch as such assets constitute a trust for exclusive purposes, they may not be appropriated for general fund uses. As stated by the court in *Valdes v. Cory* (1983) 139 Cal.App.3d 773, 788 — concerning the Public Employees Retirement System:

"Once paid, appropriated employer contributions constitute a trust fund held solely for the benefit of PERS members and beneficiaries (§ 20200). Income in excess of interest credited to employee and employer accounts is to be retained in that trust fund as a reserve against deficiencies. The reserve constitutes an integral part of that trust fund. (§ 20203.) Consequently, none of the funds within PERS including those in the reserve against deficiencies, may be appropriated for a general public purpose unrelated to the benefit of PERS members (*Gillum v. Johnson* (1936) 7 Cal.2d 744), because funds received into the treasury for special trust purposes are 'in their nature a continuing appropriation for a specific purpose' (p. 758; *Daugherty v. Riley* (1934) 1 Cal.2d 298, 308).

"Had the Legislature actually appropriated any of the PERS trust funds for purposes unrelated to the benefit of PERS members, e.g., to balance the state budget and avoid a year-end deficit, we would have no difficulty in concluding that such legislative action modified vested rights of PERS members. (See *Sgaglione v. Levitt, supra*, 337 N.E.2d 592; *State Teachers' Retirement Board v. Giessel, supra*, 106 N.W.2d 301; cf. *Whitmire v. City of* Eureka (1972) 29 Cal.App.3d 28, 34.)"

Is interest derived from the investment of the outstanding warrant balance an asset of the trust for purposes of California Constitution, article XVI, section 17, *supra*? We conclude that it is. At common law the proceeds of an investment are an accretion or increment to the principal earning it, and unless lawfully separated therefrom becomes a part thereof. (*Pomona City School Dist. v. Payne* (1935) 9 Cal.App.2d 510, 516.) Since proceeds, including interest and dividends, become part of the principal, they are subject to the same restrictions. (See 65 Ops.Cal.Atty.Gen. 588 (1982).)

In *Provident Land Corp. v. Zumwalt* (1938) 12 Cal.2d 365, an irrigation district had acquired certain land to be held "in trust for . . . and set apart to the uses and purposes set forth in [the California Irrigation District Act]." (*Id.* at 374.) The court held that while no provision had been made for the disposition of the proceeds of the land, such proceeds, over and above operating expenses, remain subject to the trust. (*Id.* at 376-377.) The court stated in part (*id.* at 375):

> "Once it is made clear that the lands are held in trust, it necessarily follows that their proceeds, whether by sale or lease, are likewise subject to the trust. It would be manifestly absurd to say that although property is held in trust, none of the benefits of the trust accrue to the beneficiaries, and that none of the rents or profits of the trust property need be used in furtherance of the trust purposes. On this point, namely, that the land is trust property, held for the 'uses and purposes' of the act, and that the proceeds are stamped with the character of the property from which they flow, the statute, read in the light of elementary principles, leaves no room for debate."

In *City of Long Beach v. Morse* (1947) 31 Cal.2d 254, the state had granted to the city its interest in tidelands within the corporate limits "in trust for the uses and purposes" connected with the development of the municipal harbor. (*Id.* at 256-258.) The city proposed to divert certain revenues derived from the production of oil and gas from the tidelands to the "Public Improvement Fund" for general municipal purposes unconnected with the grant. (*Id.* at 255.) It was first noted that as trustee, the city assumed the same burdens and was subject to the same regulations that appertain to other trustees. (*Id.* at 257.) Holding that such revenues from the land could be used only in furtherance of the trust purpose (*id.* at 258), the court stated in part (*id.* at 257-258):

> "The city of Long Beach contends that the proceeds from the production of oil and gas is merely income from the land and as such is not covered by any provisions of the trust, on the ground that the trust expressly applies only to the physical uses of the land. Whether the fund should be regarded as part of the corpus of the trust or merely as a part of the rents and profits of the land, the city as trustee has no right to devote the proceeds to general municipal improvements unconnected with the trust purposes. If the proceeds from the sale of oil and gas are regarded as corpus (see Rest. Trusts, § 238; Bogert, Trusts and Trustees, §§ 789, 828), they must be used for the purposes set forth in the legislative grants in trust, for the city, as trustee, clearly has no authority to appropriate the corpus to its own uses contrary to the terms of the trust. If the proceeds are regarded as income from trust property, the trustee, in the absence of a legislative provision to the contrary, has no more right to them than it has to the corpus. (Civ. Code, § 2229 [see now Probate Code, § 16004]; *Provident Land Corp. v. Zumwalt*, 12 Cal.2d 365, 375; *Lamb v. Lamb*, 171 Cal. 577, 580-582; *Purdy v. Johnson*, 174

7

86-1002

Cal. 521, 529; see *Methodist Benev. Assn. v. Bank of Sweet Spring*, 227 Mo.App. 566, 573 [54 S.W.2d 474, 478]."

Where a trust is constitutionally established for a designated purpose, neither the principal nor its proceeds may be statutorily diverted. In our view, such proceeds "constitute a part of the fund" within the meaning of section 20203. It is concluded, therefore, that interest earned on the investment of the outstanding balance of warrants drawn against PERF should be credited to that Fund.

The second inquiry is whether interest earned on the investment of income deposited in PERS' general cash account prior to its transfer to PERF should be credited to that fund or to the General Fund. In this regard PERS maintains a General Cash (checking) Account. This account[4] is a clearing account for the deposit of monies from outside sources, prior to their transfer to PERF. Interest accrues to this account as the result of "deposit float." Deposit float is the intervening period between the deposit of a check and its clearance. As a result of credit advanced by the bank during the normal one day float, the deposit principal is invested as part of the state's Pooled Money Investment Account.

Again, section 20203 provides in part:

"Interest earned on any cash deposit in a bank by the Treasurer and income on other assets constituting a part of the fund shall be credited to the fund as received."

Section 16305.7 provides:

"Any increment collected as the result of investment of state money shall be collected by the State Treasurer and reported by him to the State Controller for credit to the General Fund in the State Treasury."

In our view, a check deposited in a checking account, upon which a bank has advanced credit, is an asset "constituting a part of the fund" within the purview of section 20203. Consequently, neither the principal, which is a constitutionally designated trust for specified purposes, nor the

_____

[4] This account includes a "revolving Fund Account-Support" for payments such as salary advances, vacation pay, and travel expenses, a "Revolving Fund Account—Benefits" for advance payments of benefit allowances for cases of critical emergency financial needs, and an "Unclaimed Collections Account" for cash collections for which an account for deposit cannot be identified and for overpayments of amounts due. The balances of these subsidiary accounts are established by transfers from PERF and monies are disbursed directly from the accounts for designated purposes. Another of these subsidiaries called the "PERS Account" is a feeder to PERF. Monies in this subsidiary account are derived from contacting public agencies, mortgage investment income, building fund income, and other miscellaneous collections such as redeposits.

interest thereon, as previously discussed, may be diverted to the General Fund, notwithstanding the inconsistent provisions of section 16305.7.

Moreover, while the advance of credit by the bank may be made possible by virtue of certain compensating balances of other state money maintained by the Treasurer in the bank, the nature and character of the trust principal and interest remain unchanged. It may be that some equitable accommodation or arrangement between the State Treasurer, the State Controller, and PERS respecting the maintenance of such compensating balances may be negotiated, consistent with the constitutional prerequisites discussed above.

It is concluded, therefore, that interest earned on the investment of income deposited in PERS' general cash account prior to its transfer to PERF should be credited to PERF.

*****