STATE TEACHERS' RETIREMENT BOARD, Respondent, v. GIESSEL, Director of Department of Budget and Accounts, Appellant.

*November 2—November 29, 1960.*

For the appellant there was a brief by *J. Robert Kaftan,* and oral argument by *Arthur Kaftan* and *J. Robert Kaftan,* both of Green Bay.

For the respondent the cause was argued by *James R. Wedlake,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

HALLOWS, J. To understand the issue involved it is necessary to give a brief description of the nature and opera-

tion of the state teachers' retirement system. The system is basically a joint contributory money-purchase plan. Both the teachers and the state contribute and the amount of the retirement benefit is whatever can be financed with the amount credited to the teacher, depending upon current annuity rates. These rates are based upon anticipated interest earnings and the mortality experience of the fund. For the purpose of administration of the system, the statutes provide for the establishment and maintenance of three funds to which the assets of the system are allocated on the books of the board, to wit, the retirement deposit fund, the annuity reserve fund, and the contingent fund. The retirement deposit fund consists of deposits made by the teachers, those paid by the state for the teachers, and the interest added to these deposits. The annuity reserve fund consists of the amounts transferred thereto from the retirement deposit fund to pay annuities granted to retired teachers and includes interest credited thereto. Both of these funds have been maintained on an actuarily sound basis, at least until recently when certain minimum benefits were provided. The liability for any benefit to a teacher in excess of the amount which could be purchased from his own accumulations at the time of his retirement is carried as a charge upon the third, or contingent, fund. But this charge is not reflected as a liability in the contingent fund until the teacher actually retires.

The contingent fund was created for the purpose of liquidating obligations resulting from service credits accruing prior to 1922. The state teachers' retirement system which was created in 1921 replaced an earlier system established in 1911. At the time the contingent fund was created, this fund was insolvent and the law provided that the 1922 percentage relationship of assets to liabilities of this fund was to be increased two and one-half per cent per year by contributions from the state so that in approximately forty years the fund would be actuarily solvent.

In administering the system, sec. 42.33 (2), Stats., requires the plaintiff board to establish and maintain a reserve for contingencies in such amount "as the interest of the members and the future solvency of the funds may require." These three funds and the reserve for contingencies constitute the assets of the system. As a matter of state finance and accounting, the state treasurer has only one fund for the system, entitled, "Teachers' insurance and retirement fund." As a matter of accounting, all the interest and profits from the investments are first credited by the board to its reserve contingency fund. The expenses of administration, losses on investments, and other proper expenses are charged to this reserve. Part of the net earnings on the investments is allocated by the board and transferred to the retirement deposit fund, the annuity reserve fund, and the contingent fund, and a sufficient balance kept in this reserve fund as the interest of the members of the system and the future solvency of the funds may require.

The nature of the state teachers' retirement system and the rights of the members thereof have been the subject of four prior decisions of this court: *State ex rel. Dudgeon v. Levitan* (1923), 181 Wis. 326, 193 N. W. 499; *State ex rel. O'Neil v. Blied* (1925), 188 Wis. 442, 206 N. W. 213; *State ex rel. Stafford v. State Annuity & Investment Board* (1935), 219 Wis. 31, 261 N. W. 718; *State ex rel. Thomson v. Giessel* (1952), 262 Wis. 51, 53 N. W. (2d) 726. The result of these decisions is that the teachers have a contractual relationship with the state and a vested right in the state teachers' retirement system. The contractual right and vested interest of the teachers in the retirement system are not disputed by the appellant, but it is argued the right of the teachers is not such as would exclude payment of the charge for the governor's study commission out of the earnings of the state teachers' retirement fund. It is argued that the plaintiff board is required to pay out funds according to law and ap-

propriations from the earnings of the fund have been made by law each year, and therefore there is no vested right in the gross earnings of the fund. We do not agree. The teacher's right, based on contract, extends to the retirement system. The earnings on investments, part of which represent contributions made by the teachers and part contributed by the state under the contract with them, constitute assets of the system. The reserve for contingencies set up by the board is a part of the system.

The appellant's argument would deny any rights to the earnings on the investment until they are allocated and credited to the individual teacher's account. The right cannot be construed so narrowly. The right includes the proper use of the earnings. The expense of administering the system, losses on investments, and other proper expenses and charges are, of course, to be paid by the system. However, the legislature and the plaintiff board are not free to spend or appropriate the earnings of the fund except in a manner authorized by statute relating to the state teachers' retirement system.

The question, then, is whether the expense for the governor's study commission sought to be charged to the state teachers' retirement fund by ch. 477, Laws of 1955, is a proper expense of the retirement system. The study proposed for the governor's study commission was broad in its purpose. In essence, it was a study of any retirement problem relating to any retirement system which affected state finances. The report was for the benefit of the governor and the legislature, to whom the report was made. The plaintiff board could not have made such a study within the duties conferred upon it by the statutes, expressly or by necessary implication. The board is an administrative, not a lobbying, agency. Its duty is to administer the teachers' retirement system. True, it may make recommendations for correctional and other legislation, but it is not the function of the board

to study retirement systems for the purpose of sponsoring legislation.

It is claimed that the purpose of the study by the governor's study commission was to improve the retirement system and, therefore, was within the purpose of the Retirement Law, as stated in the *Dudgeon Case, supra.* It is true that the governor's study commission ultimately made recommendations to improve the system. It is also true that the study may have revealed that no changes were necessary or desirable. The ultimate or general purpose of the governor's study commission was not the same as the purpose for which the state teachers' retirement system was established. The cost of adequately informing the legislature and the governor so that they may intelligently perform their duties is not a proper expense of the teachers' retirement fund.

Ch. 477, Laws of 1955, creating sec. 20.02 (11), was not a part of the State Teachers' Retirement Act which is defined in sec. 42.21. The complicated system of funds and accounting does not determine the rights of the teachers in the system. Unless the appropriation for expenditures of money belonging to the retirement system, whether principal or earnings and regardless of the accounting method which reflects their existence, comes within the purposes of the statutes relating to the state teachers' retirement system, such an appropriation cannot be held valid. The declaration by the legislature that part of the cost of the study was an expense of the retirement fund does not determine the validity of the expense. The argument of the appellant would free all earnings on investments in the retirement fund from any rights of the members of the system. The expenses of integrating social-security benefits stand on a different ground and it cannot be argued logically that because such expense was paid from the earnings of the fund, therefore the expense of the governor's study commission may be so paid.

It is argued the board took part in the study and the system received some of the benefits and, therefore, the board is estopped from questioning the constitutionality of the law. The make-up of the commission was determined by sec. 3 (2) of ch. 477, Laws of 1955, and of its 22 members, the executive secretary of the state teachers' retirement board and one representative from the attorney general's office assigned to the board were members. Such participation cannot waive the rights of the members of the teachers' system or of the board. The board as such took no part in the study. Assuming benefits were derived by some members of the state teachers' retirement system, those benefits were by virtue of the laws passed by the legislature.

It is vigorously contended that earnings from the increased contributions to the fund which resulted from the legislation of 1957 can be used to pay this charge on the theory that a teacher's contract is on a yearly basis and whatever law is in effect at the time of the contract governs it. Following this argument to its logical conclusion would mean that until retirement the security of the teachers in the system is of one-year duration. Such an argument was rejected in the cases previously cited. The argument also assumes that the expense was a proper one. The appropriation from the teachers' fund was not a part of the Teachers' Retirement Law, but was under the appropriation and salaries chapter. Furthermore, ch. 477, Laws of 1955, does not provide that only future earnings from the increased contributions were to be used to pay the charge. Therefore, that issue is not before us.

By sec. 15.15 (4), Stats., the defendant is not authorized to withhold for the general fund of the state of Wisconsin as a deduction from the money which the plaintiff board certified was to be transferred and which was appropriated by the legislature therefrom to the retirement system pursuant to sec. 42.46 (2). The $18,737.14 was not owing the

state, and the defendant was not collecting money due the state. The act provided for a reimbursement of the general fund of the state from the earnings of the teachers' retirement fund. The defendant cannot offset this amount and in any event he did not offset it from the earnings of the teachers' fund.

Only that part of ch. 477, Laws of 1955, relating to the appropriation of funds from the state teachers' retirement fund is in question. This provision is severable from the rest of the act. The study has been made and the statute by its terms provided for the transfer of the fund after its completion. No other part of the act is affected. The expenses of the governor's study commission have all been paid out of the general fund. Sec. 990.001 (11), Stats., provides for severability and raises the presumption that the provisions of any session law are severable and if any provision of a statute or session law is invalid, such invalidity shall not affect other provisions which can be given effect without the invalid provision. The invalid part of ch. 477 can stand alone and the balance of ch. 477 is unaffected by this decision. *Redevelopment Authority v. Canepa* (1959), 7 Wis. (2d) 643, 97 N. W. (2d) 695.

*By the Court.*—Judgment affirmed.