PATRICK J. LUCEY, Governor of Wisconsin
You request my opinion on the constitutionality of 1971 Assembly Bill 1009 as amended by Assembly Amendment 1. The material part of such amended bill reads:
"RETIREMENT LAW EFFECTIVENESS. Every person who is a participating employe under chapter 41 of the statutes on the effective date of this law (1971), and every person who is an active member under chapter 42 of the statutes on the effective date of this law (1971), shall be entitled to receive all benefits, regardless of whether such benefits may be deemed prospective or retroactive, under chapters _________ (Senate Bill 503 or Senate Bill 526 or both), laws of 1971."
The effective date for the liberalized retirement benefits proposed in Senate Bills 503 and 526 is July 1, 1972. Assembly Bill 1009 would permit members of the Wisconsin Retirement Fund, ch. 41, Stats., and the State Teachers' Retirement System, ch. 42, Stats., retiring between the effective date of Bill 1009 and the effective dates of Senate Bills 503 and 526 to receive the liberalized benefits of these later bills. Such liberalized benefits constitute extra compensation payable in the case of teachers and state employes, from the State Treasury.
Article IV, sec. 26, Wis. Const., reads in part:
"The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; * * *. This section shall not apply to increased benefits for teachers under a teachers' retirement system when such increased benefits are provided by a legislative act passed *Page 464 
on a call of yeas and nays by a three-fourths vote of all the members elected to both houses of the legislature."
Assembly Bill 1009 was passed on a vote of 83 ayes to 15 noes in the Assembly and a vote of 30 ayes to 3 noes in the Senate, within the above quoted requirements of Art. IV, sec. 26, Wis. Const., permitting increased benefits for teachers who are no longer employed. Should Senate Bill 526 pass both houses by a three-fourths vote, the application of Assembly Bill 1009 to increase benefits for teachers would not violate Art. IV, sec. 26.
Article IV, sec. 26, Wis. Const., does not apply to retired members of the Wisconsin Retirement Fund other than State employes, since such section applies only to public officers and employes who are paid out of the State Treasury. State ex rel. Singer v. Boos (1969),44 Wis.2d 374, 171 N.W.2d 307. The court so stated inSinger v. Boos at page 380:
"This court has repeatedly held that the constitutional prohibition in art. IV, sec. 26, applies only to public officers who are paid out of the state general fund. In the instant case, the increased pensions will be paid entirely out of county funds and thus the mandate of art. IV, sec. 26, is inapplicable."
It is, therefore, only necessary to consider the effect of Art. IV, sec. 26, Wis. Const., on increased retirement benefits, as implemented by Assembly Bill 1009, to State employes and to teachers should Senate Bill 526 pass by less than a three-fourths vote. InState ex rel. Thomson v. Giessel (1952), 262 Wis. 51,53 N.W.2d 726 (hereinafter referred to as the firstGiessel case), the court held unconstitutional additional annuity payments to teachers who were already retired. Section 42.535, Stats. (1951), made available additional retirement benefits to retired teachers by providing that every qualified retired teacher "shall be paid an additional $1 per month for each year of teaching experience." These additional benefits were granted only to teachers who retired before June 30, 1951. The section granting such additional benefits, sec. 42.535, became effective thereafter on July 19, 1951. The court stated on page 55 of Giessel: *Page 465 
"* * * It is apparent, therefore, that this extra compensation is not granted until after the teaching contracts had not only been entered into but the teachers' services had been performed and the teacher had ceased to serve. If it be true, then, that the additional benefits and annuities form extra compensation, which was not granted until after the contracts were entered into or until the services had been rendered, the prohibition of sec. 26, art. IV, Const., renders the legislation void."
After discussing and disposing of various arguments directed to the issue that the "additional benefits" were not prohibited compensation, the court held at page 65:
"* * * we conclude that the effect of sec. 42.535, Stats., is to grant extra compensation to public servants after the services are rendered and to public contractors after the contracts are entered into, in violation of sec. 26, art. IV of the state constitution. * * *"
The court further indicated at page 64 that their holding would be similar were the benefits in question available to all public employes generally and not exclusively to teachers. The court there stated:
"It has not escaped the attention of the court that a decision sustaining an increase of benefits for already retired teachers would clear the way for legislation increasing benefits for all public employees, including judges, granted by the legislature from time to time after their retirement, and such a decision would be consonant with the selfish interests of the court. Nevertheless, as we read sec. 26, art. IV, Const., this would involve an exception to a clear and unmistakable command. If exceptions are to be made, they should not come from the legislature or the court but from those whose proper function it is to amend the constitution. * * *"
There is an important distinction between the facts in the first Giessel case and the question raised by Assembly Bill 1009. In the first Giessel case the extra compensation was not granted until after the teaching contracts had not only been entered into but the teachers' services had been performed and the teachers affected had already ceased to serve. *Page 466 
However, under the subject bill the increased benefits of Senate Bills 503 and 526 would be available to any State employe who is a "participating employe" or any teacher who is an "active member" on the effective date of the law created by Bill 1009. In State ex rel.Thomson v. Giessel (1953), 265 Wis. 558, 61 N.W.2d 903
(hereinafter referred to as the second Giessel case), the court examined legislation passed after the firstGiessel case which legislation provided for the rehiring of retired teachers on a standby basis and paying of compensation for such standby services. The court in the second Giessel case declined to consider the motives of the legislature in passing the legislation and found the contracts valid on their face.
In State Teachers' Retirement Board v. Giessel
(1960), 12 Wis.2d 5, 106 N.W.2d 301, the court held that teachers had contractual rights in the retirement system and therefore the legislature could not use earnings of the State Teachers' Retirement System to pay a part of the cost of a study of public employe retirement systems. The court said at pages 9 and 10:
"The nature of the state teachers' retirement system and the rights of the members thereof have been the subject of four prior decisions of this court: State exrel. Dudgeon v. Levitan (1923), 181 Wis. 326, 193 N.W. 499;State ex rel. O'Neil v. Blied (1925), 188 Wis. 442,206 N.W. 213; State ex rel. Stafford v. State Annuity Investment Board (1935), 219 Wis. 31, 261 N.W. 718;State ex rel. Thomson v. Giessel (1952), 262 Wis. 51,53 N.W.2d 726. The result of these decisions is that the teachers have a contractual relationship with the state and a vested right in the state teachers' retirement system. The contractual right and vested interest of the teachers in the retirement system are not disputed by the appellant, but it is argued the right of the teachers is not such as would exclude payment of the charge for the governor's study commission out of the earnings of the state teachers' retirement fund. It is argued that the plaintiff board is required to pay out funds according to law and appropriations from the earnings of the fund have been made by law each year, and therefore there is no vested light in the gross earnings of the fund. We do not agree. *Page 467 
The teacher's right, based on contract, extends to the retirement system. The earnings on investments, part of which represent contributions made by the teachers and part contributed by the state under the contract with them, constitute assets of the system. The reserve for contingencies set up by the board is a part of the system."
While I am aware of no case wherein the court has had the occasion to rule on the question of the contractual relationship of members of the Wisconsin Retirement Fund, the essential features of the teachers' fund are similar to the degree that I consider the reasoning of the Giessel Case as quoted just above to be persuasive in similar situations. The Wisconsin retirement Fund and the State Teachers' Retirement system were both created as joint contributory, money-purchase systems. In both cases the contributions by the participants and municipalities are held in trust for members of the funds. Secs. 41.03 (1) (a) and 42.22 (5), Stats. Most features essential to the subject question are similar. I conclude, therefore, that members of the Wisconsin Retirement Fund have contractual and vested rights in their fund as it exists on the day of their retirement similar to those which the court has determined to be vested in teachers.
The final question which then arises is whether Assembly Bill 1009 provides additional benefits which are sufficiently certain to be vested in the members of the Wisconsin Retirement Fund or the State Teachers' Retirement System not yet retired, but who will retire before Senate Bills 503 or 526 are effective. While the terms which would account for the increased benefits are clearly set forth in Senate Bills 503 and 526, such bills are, of course, susceptible to amendment before passage. A legitimate argument could therefore be made that, since the bills are only pending in the legislative process, Assembly Bill 1009 provides no benefits definite enough to be contractual or vested. Therefore, it could be argued that Bill 1009 is nothing more than a promise to take care of employes by legislation implemented to raise benefits after their retirement and, consequently, the bills violate Art. IV, sec. 26, Wis. Const. *Page 468 
However, an act of the legislature is to be sustained if possible by any reasonable construction of the constitution or of the act itself and all doubts as to its validity are to be resolved in favor of the act. The courts could reasonably determine that the reference contained in Assembly Bill 1009 is Senate Bills 503 and 526 as they exist on the effective date of Bill 1009 and, therefore, that there is sufficient certainty, should the applicable portions of such bills pass in that form, to sustain Bill 1009 against the provisions of Art. IV, sec. 26, Wis. Const.
There are no clear legal precedents with respect to the question you pose. There are meritorious considerations to support both a determination of constitutionality as well as unconstitutionality of this legislation, and I am unable to predict with reasonable certainty what the courts would do if presented with a challenge to Assembly Bill 1009 should Senate Bills 503 and 526 become law. Under these circumstances, I believe it is appropriate to adopt the rule of statutory construction that a statute is presumed to be constitutional unless shown to be otherwise. It is, therefore, my opinion that Assembly Bill 1009 does not clearly violate Art. IV, sec. 26, Wis. Const., and would be upheld if challenged should Senate Bills 503 and 526 be enacted substantially as presently pending before the state Legislature
RWW:WMS