ASSOCIATION OF STATE PROSECUTORS, on behalf of its members and David A. Feiss, Petitioners-Respondents,

v.

MILWAUKEE COUNTY and the Milwaukee County Pension Board, Respondents-Appellants-Petitioners.

Supreme Court

*No. 93–3329. Oral argument November 1, 1995.—Decided March 13, 1996.*

(Also reported in 544 N.W.2d 888.)

550

For the respondents-appellants-petitioners there were briefs *Steven D. Huff, Anne Willis Reed, Bennett E. Choice, Dean E. Mabie, Thomas A. Cabush* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* and *Timothy R. Schoewe*, corporation counsel, all of Milwaukee and oral argument by *Anne Willis Reed.*

For the petitioners-respondents there was a brief from *Timothy E. Hawks, Jeffrey P. Sweetland* and *Shneidman, Myers, Dowling Blumenfield*, Milwaukee and oral argument by *Jeffrey P. Sweetland.*

Amicus curiae brief was filed by *Michael R. Burton* and *Burton & Davis*, Milwaukee for the Retired Employees of Milwaukee County.

■

Amicus curiae brief was filed by *Alvin R. Ugent* and *Podell, Ugent & Cross, S.C.*, Milwaukee for the District Council 48, AFSCME, AFL-CIO.

Amicus curiae brief was filed by *Bruce Meredith, Chris Galinat,* counsel, Madison for the Wisconsin Education Association Council

WILLIAM A. BABLITCH, J.   Milwaukee County and the Milwaukee County Pension Board (Milwaukee County) challenge the constitutionality of legislation concerning the Milwaukee County Employee Retirement System (County Plan) and the Wisconsin Retirement System (State Plan). The purpose of the legislation is to produce a uniform statewide pension plan for prosecutors and to provide prosecutors with prior service credits for their Milwaukee County employment. Under the legislation, Milwaukee County is required to transfer employer contributions made on behalf of Milwaukee County prosecutors from the County Plan to the State Plan. Milwaukee County argues that such a transfer unconstitutionally takes funds held in trust for the benefit of vested employees and retirees.

We hold that vested employees and retirees have protectable property interests in their retirement trust funds which the legislature cannot simply confiscate under the circumstances of this case. Although we recognize that legislative modifications may be necessary in limited situations, we conclude that the transfer of funds from the County Plan to the State Plan takes property without due process of law.

The relevant facts are undisputed. This action involves two different retirement systems, the County Plan and the State Plan. Prior to January 1, 1990,

employees in district attorney offices throughout Wisconsin were employees of their respective counties. Thus, assistant district attorneys in the Milwaukee County District Attorney's Office were employees of Milwaukee County. The Milwaukee County Assistant District Attorneys (ADAs) were not eligible to participate in the State Plan, pursuant to Wis. Stat. § 40.21, since Milwaukee County never elected to participate in this plan. All other counties in Wisconsin participated in the State Plan. Under the County Plan, persons employed by Milwaukee County prior to January 1, 1982 could qualify for a deferred vested pension if they completed at least six years of county service. Persons employed on or after January 1, 1982, however, had to complete at least 10 years of service in order to qualify for a deferred vested benefit under the County Plan.

As of January 1, 1990, all district attorneys became state employees. All Milwaukee County ADAs were given the option to remain in the County Plan or to transfer to the State Plan. However, when the transfer of the Milwaukee County ADAs to the State Plan took effect, none of those who had been hired after January 1, 1982 had sufficient time in the County Plan to be vested since none of them yet had 10 years of service. While they could join the State Plan as state employees, their credited service in the State Plan could begin only on January 1, 1990. Thus, the non-vested Milwaukee County ADAs were subject to an anomaly since the State Plan did not give them credit for their time as county employees.

In order to place the non-vested Milwaukee County ADAs on an equal footing with all other assistant district attorneys, the legislature enacted § 333c of

1989 Wis. Act 336, creating Wis. Stat. § 978.12(5)(c)5.[1] Pursuant to § 978.12(5)(c)5, a participating non-vested Milwaukee County ADA could elect to transfer employer contributions made on his or her behalf, along with the interest accrued, from the County Plan to the State Plan. The companion statute, Wis. Stat. § 40.02(17)(g),[2] provided that the non-vested Milwaukee County ADAs would receive service credit for county employment in an amount dependent upon the dollar amount transferred determined by an actuary.

---

[1] All future statutory references are to the 1993-94 volume unless otherwise indicated. Wisconsin Stat. § 978.12(5)(c)5 states:

> Notwithstanding any other provisions of the retirement system established under chapter 201, laws of 1937, if a district attorney or state employe of the office of district attorney in a county having a population of 500,000 or more who does not have vested benefit rights under the retirement system established under chapter 201, laws of 1937, becomes a participating employe under the Wisconsin retirement system under ch. 40 as provided in this subsection, the participating employe may, on a form developed by the department of employe trust funds in consultation with that county, elect to transfer from the retirement system established under chapter 201, laws of 1937, an amount equal to all employer contributions made on his or her behalf, not including any employer contributions for unfunded prior service liability made on the basis of his or her earnings, to the retirement system established under chapter 201, laws of 1937, together with all interest actually accrued on those contributions, to the employer required contribution account provided for by s. 40.05(2). (Emphasis added).

[2] Wisconsin Stat. § 40.02(17)(g), states:

> Any participating employe for whom employer required contributions have been made under s. 978.12(5)(c)5. shall be granted the maximum amount of creditable service that the board, on the recommendation of the actuary, determines can be fully funded by such contributions, not to exceed the total period of service under the retirement system established under chapter 201, laws of 1937, for which such contributions have been made.

By July 1991, approximately 42 Milwaukee County ADAs, who were non-vested in the County Plan, elected to have Milwaukee County contributions made on their behalf transferred to the State Plan. In response, Milwaukee County refused to transfer any funds contending that the contributions to the County Plan were not allocated to individuals.

The County Plan is a defined benefit plan in which its members are assured they will receive a specific retirement benefit calculated as a percentage of their final average salary multiplied by their years of county service. Actuaries make projections such as plan participation, future employee salary increases, the ages at which participants are expected to retire and economic assumptions. Actuaries then examine the covered employees to ascertain the cost of the plan. They examine age, employment and salary history for all individual participants. The individual participant data is the basis for determining the employer's annual contribution. After the actuarial findings, contributions are made by the employer to cover the plan's anticipated present and future liabilities. Also, under the County Plan, pursuant to Milwaukee County general ordinances, §§ 201.24 through 5.1, different percentage multipliers are used for calculating the benefits to be paid to the different groups of county employees. The Milwaukee County Pension Board administers the County Plan and submits the pertinent data, including the actual contribution required, to the County's board of supervisors each year.

The State Plan is a hybrid plan with characteristics of both a defined contribution plan and defined benefit plan. Defined contribution plans do not provide specific dollar benefits at retirement. The benefits payable to the employees are funded by both the employer

and employee. The State Plan places its contributions into an employer accumulation reserve, pursuant to Wis. Stat. § 40.04(5). Contributions placed in the accumulation reserve are applied solely to the payment of fixed monthly annuities based on percentages of the final average earnings, multiplied by years of service pursuant to Wis. Stat. § 40.23(2)(b) and (2m)(e).

Milwaukee County refused to make the transfer from the County Plan to the State Plan on the ground that such a transfer would have misappropriated funds held in trust exclusively for the benefit of vested employees and retirees. The Association of State Prosecutors and David A. Feiss (The Association) sought a writ of mandamus to require Milwaukee County and its pension board to transfer money equal to "all employer contributions made on behalf of" all nonvested Milwaukee County ADAs from the County Plan to the State Plan. The circuit court granted mandamus and ordered Milwaukee County to calculate and transfer the contributions made on behalf of the 42 ADAs.

Milwaukee County appealed. The court of appeals affirmed the circuit court in all respects. It concluded that the County Plan participants did not have a property interest in contributions to the County Plan's trust fund. Therefore, the court of appeals held that the legislatively-mandated transfer of funds from the County Plan to the State Plan was not a "taking" of their property without due process. We granted Milwaukee County's petition for review to determine whether the transfer of pension funds from the County Plan to the State Plan is a taking of property without due process of law.

Milwaukee County argues that vested Milwaukee employees and retirees have a legitimate protectable property interest in the County Plan's trust fund. It

contends that because the funds are held in trust, both vested participants and retirees have property interests not only in their own benefits, but also in the trust funds themselves. Therefore, Wis. Stat. § 978.12(5)(c)5 unconstitutionally takes property because the statute appropriates private funds held in trust for current vested members of the County Plan without due process of law.

The Association argues that the vested beneficiaries of the County Plan do not have property rights in the specific funds designated for transfer by Wis. Stat. § 978.12(5)(c)5. Since Milwaukee County need only transfer those funds relating to the 42 non-vested ADAs, the beneficiaries' property interests will not be injured.

We address the single issue of whether Wis. Stat. § 978.12(5)(c)5 violates federal constitutional prohibitions against the taking of property without due process. This determination involves a question of law that we review de novo. *In Interest of J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991). A statute is presumed to be constitutional. *State v. Hart*, 89 Wis. 2d 58, 64, 277 N.W.2d 843 (1979). When attacking the constitutionality of a statute, the contesting party must prove the unconstitutionality of the statute beyond a reasonable doubt. *In Matter of E.B.*, 111 Wis. 2d 175, 180, 330 N.W. 2d 584 (1983).

This issue involves two questions. The first question we address is whether a property interest exists for purposes of the due process clause. The Fourteenth Amendment of the United States Constitution prevents the state from depriving a person of life, liberty or property without due process of law. To establish a due process violation, it is necessary to show that he or she

557

had a property interest and that he or she was deprived of the property interest without due process of law. *Dane County v. McCartney*, 166 Wis. 2d 956, 967, 480 N.W.2d 830 (Ct. App. 1992). The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. *Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). These property interests may take many forms. In *Board of Regents v. Roth*, 408 U.S. at 577, the Supreme Court stated:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

Our caselaw supports the conclusion that each vested member and retiree of the County Plan has a property interest in their retirement system.

In *State Teachers' Retirement Board v. Giessel*, 12 Wis. 2d 5, 106 N.W.2d 301 (1960), we considered whether the legislature could lawfully require a state teachers' retirement system to pay for a study conducted by the governor's commission. This court held that the funds could not be transferred out of the teachers' retirement fund. We declared that such a transfer deprived teachers of vested rights in both their retirement fund and in the fund's investment earnings. This court found that "the teachers have a contractual relationship with the state and a vested right in the state teachers' retirement system." *Id.* at 9. This right extends to the retirement system as a whole.

> The [teacher's] right cannot be construed so narrowly. The right includes the proper use of the earnings
>
> . . . . [T]he legislature and the plaintiff board are not free to spend or appropriate the earnings of the fund except in a manner authorized by statute relating to the state teachers' retirement system.

*Id.* at 10.

Although *Giessel* involved a retirement fund that is structurally different from the fund involved in the present case, *Giessel* nevertheless stands for the proposition that vested employees and retirees have property interests in their retirement system.

In *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 195 Wis. 2d 1001, 537 N.W.2d 400 (Ct. App. 1995), the court of appeals relied on *Giessel* and held that the annuitants of the Wisconsin Retirement System had a property interest in the earnings of their trust fund. *Id.* at 1027. The court concluded that "on the basis of *Giessel* that WRS [Wisconsin Retirement System] annuitants have a property interest in the earnings of the trust fund . . . ." *Id.* at 1027.

The Association attempts to distinguish *Giessel* and *Wisconsin Retired Teachers* from the facts of the present case by emphasizing that those cases involved pension plans that were "defined contribution" plans, whereas the present case involves a "defined benefit plan."[3] The Association argues that, since an employee's benefit in a defined contribution plan is

[3] Under a "defined benefit" scheme, the employer's contributions are not credited to individual accounts. Rather, an actuary projects the amount necessary to fund the future payment of benefits to retirees and then calculates a single appropriate sum to be contributed to the pension fund. Defined benefit schemes benefit "vested" employees only and vested

based upon amounts contributed to the plan on his or her behalf, those employer contributions become the beneficiary's individual property from the moment they are contributed. Milwaukee County's defined benefit plan is different; fund assets and earnings do not dictate the amount of a vested employee's benefits. Such benefits are determined strictly according to a formula based on the employee's final average salary and years of service. Therefore, the Association states, members of a defined benefit plan do not have individual property rights in those amounts contributed to their retirement fund.

██

We agree that there is a distinction between a defined contribution and a defined benefit plan. However, this distinction is of no significance in the present case. The structure of a pension plan merely delineates the method of financing the pension funds and determines the appropriate amount of employer contributions. Any pension plan's ability to meet its obligations can be jeopardized when funds are taken from it, since every dime is arguably part of a management strategy dependent upon spreading the fund's monies as broadly as possible. Therefore, although we acknowledge the distinctions between these two types of plans, we conclude that vested County Plan beneficiaries have property rights in their retirement fund.

---

employees must usually wait until retirement age to receive their benefits.

Under a "defined contribution" scheme, a percentage of the employee's income is credited to a separate individually maintained account. The employer makes this contribution on the employee's behalf. The employer may also make separate "employer" contributions to the fund.

We now turn to the second question: whether the transfer of funds from the County Plan to the State Plan pursuant to Wis. Stat. § 978.12(5)(c)5 takes property without due process of law.

The Association argues that the transfer of funds prescribed by § 978.12(5)(c)5 will not affect the benefits paid to any retiree or member of the County Plan. The Association contends that, since the contributions to be transferred make up less than one-third of one percent of the County Plan's net assets, the transfer will not diminish or "take" the benefits of County Plan employees and retirees.

We disagree. Governmental takings do not become exempt from due process requirements simply because they may be actuarially insignificant. Wisconsin Stat. § 978.12(5)(c)5 orders Milwaukee County to transfer funds from the County Plan to the State Plan. This transfer takes funds directly out of the County Plan trust fund. The gravity of a property deprivation is irrelevant to the question of whether such rights are violated without due process. *Goss v. Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729 (1975).

The Association further argues that, under the County's defined benefit plan, the beneficiaries are not responsible for the funding of the retirement trust fund. Only Milwaukee County is required to make contributions on behalf of participating employees. The Association explains that, if the trust fund does well, the County must contribute less; if it does poorly, it must contribute more. If funds are dissipated, Milwaukee County, as the guarantor of the fund, is the only entity responsible for making up any shortfall. Therefore, the Association contends, a transfer of funds out of the County Plan would not affect the benefits of County Plan participants.

We agree with the Association's explanation of a defined benefit plan. However, we disagree with its suggestion that a beneficiary's property interest would never be impaired or diminished by a subsequent transfer of funds.

While the specific transfer of trust funds pursuant to Wis. Stat. § 978.12(5)(c)5 may not immediately threaten the benefits of vested County Plan beneficiaries, the precedent set by such a transfer certainly could. One commentator describes the problem as follows:

> With public employee pension systems absorbing an increasingly large share of state and local revenues, financially troubled governments have begun increasingly to look to these systems as a source of fiscal relief. In some instances, legislatures have sought directly to alter the benefit eligibility structure of a government's pension program . . . . Whatever their form, such efforts clearly call into question the protection to be afforded to the public employee in his pension.

*Public Employee Pensions in Times of Fiscal Distress*, 90 Harv. L. Rev. 992, 993 (1977).

Many employees have become, and might continue to become, employees of the state or of different private employers. If the legislature orders contributions made "on behalf of" employees to be transferred to such new employers, the actuarial soundness of the plan could eventually suffer.

In the present case, the legislature could have easily provided service credits to its new employees under the State Plan, and funded the resulting larger retirement pensions with state money. Instead, the

legislature chose to give the service credits, but to pay for the larger pensions by transferring money out of the County Plan. This it cannot do. In the present case, the state cannot simply "reach" into the County Plan to pay for obligations it has incurred. Vested County Plan beneficiaries have protectable property interests in the integrity and security of their retirement fund. Because Wis. Stat. § 978.12(5)(c) deprives the beneficiaries of this protectable interest, the statute takes property without due process of law.

Our conclusion, however, does not render every legislative intervention into a retirement trust fund unconstitutional. Legislative modifications may be permissible in limited circumstances.

The purpose of pension plans is to give the employees a protected interest in postretirement income. *'Til Death Do Us Part: Pennsylvania's 'Contract' with Public Employees For Pension Benefits*, John J. Dwyer, 59 Temp. L. Q. 553, 585 (1986). We recognize that the legislature should retain a limited power to adjust or amend a retirement plan in certain situations, such as when it is necessary to preserve the actuarial soundness of a plan or to salvage financially troubled funds.

In *Spina v. Consolidated Police and Firemen's Pension Fund Commission*, 197 A.2d 169, 176 (1964), the Supreme Court of New Jersey stated the following:

> What happens if the plan is unsound, so that little or nothing will remain for those presently contributing?
>
> . . . As a practical matter, legislative intervention is the only sensible approach.

In *Spina*, the retirement fund at issue could not meet all of its present and future demands. The court held that the legislature did possess the power to enact

amendatory legislation that appropriately dealt with the insolvent employee retirement fund. *Id.* at 176.

In *Dadisman v. Moore*, 384 S.E.2d 816 (W.Va. 1989), a West Virginia court recognized that pension plan participants had contractually vested property rights created by the pension statute, and that such rights were enforceable and could not be impaired or diminished by the state. *Id.* at 827. In *Dadisman*, the state legislature improperly transferred monies out of the pension fund which severely underfunded the trust. The court concluded that:

> . . . the realization and protection of public employees' pension property rights is a constitutional obligation of the State. The State cannot divest the plan participants of their rights except by due process, although prospective modifications which do not run afoul of the Federal or State impairment clauses are possible.

*Id.* at 828-29.

We agree with the reasoning of these cases. Although the legislature can modify pension plans in limited circumstances, the due process clause prevents it from doing so unreasonably.

In the present case, the County Plan was neither insolvent nor in fiscal distress. The purpose of Wis. Stat. § 978.12(5)(c)5 was not to improve the actuarial soundness of the pension plan, but to create a uniform statewide pension plan for prosecutors and to provide non-vested prosecutors with prior service credits. This case does not present one of those situations in which legislative intervention may be needed.

Therefore, based on all the above, we hold that vested employees and retirees have protectable prop-

erty interests in their retirement trust funds which the legislature cannot simply confiscate under the circumstances of this case. Although we recognize that legislative modifications may be necessary in limited situations, we conclude that the transfer of funds from the County Plan to the State Plan pursuant to Wis. Stat. § 978.12(5)(c)5 takes property without due process of law.

*By the Court.*—The decision of the court of appeals is reversed.

DONALD W. STEINMETZ, J., did not participate.