Mary E. Fazio, Plaintiff-Respondent,

v.

Department of Employee Trust Funds,
Defendant-Appellant.†

Court of Appeals

*No. 04–0064. Submitted on briefs October 14, 2004.—Decided
March 24, 2005.*

2005 WI App 87

(Also reported in 696 N.W.2d 563.)

† Petition to review granted 6-1-2005.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *L. Jane Hamblen*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert L. Elliott* of *Law Offices of Robert L. Elliott*, Milwaukee.

Before Deininger, P.J., Lundsten and Higginbotham, JJ.

¶ 1. DEININGER, P.J. The Wisconsin Department of Employee Trust Funds appeals an order for judgment entered in favor of Mary Fazio and other beneficiaries of deceased participants in the Wisconsin Retirement System. The circuit court concluded that the department's failure, for lump sum death benefits paid to beneficiaries under WIS. STAT. § 40.73(1)(c) (2003–04),[1] to include interest or earnings accrued from the date of the participants' deaths until payments were made to the beneficiaries constituted a taking "for public use without just compensation," in violation of the WIS. CONST. art. I, § 13. We conclude that no unconstitutional taking occurred because a beneficiary does not acquire a property interest in a lump sum death benefit under § 40.73(1)(c) until the beneficiary applies for a death benefit as required by WIS. STAT. § 40.71(3).

¶ 2. We also conclude that the circuit court erred by ordering the department to pay damages to certain other beneficiaries who were not members of the plaintiff class that the court had previously certified. Accordingly, we reverse the appealed order and remand for the entry of an order dismissing this action.

## BACKGROUND

¶ 3. The Wisconsin Retirement System (WRS) provides benefits to participating public employees and retirees, and in some cases, to their survivors or ben-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. Although the benefits payable to some of the plaintiffs in this case were determined under earlier versions of the statutes, for convenience, we will refer to the current edition.

eficiaries. WISCONSIN STAT. § 40.71(2) provides that a named beneficiary may request the payment of a death benefit as either an annuity or a lump sum payment, unless the deceased WRS participant had directed that a lump sum not be paid. The department makes lump sum payments to beneficiaries only after they have filed with the department a "copy of the death certificate of the participant or annuitant"; a "written application of the beneficiary for the benefit"; and "any additional evidence deemed necessary or desirable by the department." Section 40.71(3).

¶ 4. As relevant to this litigation, WIS. STAT. § 40.73 provides alternative methods for calculating the death benefit to which the beneficiary of a WRS participant who dies while actively employed may be entitled. For participants who are neither WRS annuitants nor "participating employees"[2] at the time of their deaths, the lump sum death benefit payable to a named beneficiary is equal to "the sum of the additional and employee required contribution accumulations credited to the participant's account on . . . the first day of the month in which the death benefit is approved." Section 40.73(1)(a). Similarly, for "participating employees" who die while actively employed, the lump sum amount payable to a named beneficiary is "the sum of the additional contribution and twice the employee required contribution accumulations credited, including any interest credited to the accumulations, to the participant's account on . . . the first day of the month in which the death benefit is approved." Section 40.73(1)(am).

---

[2] "Participating employee," as defined in WIS. STAT. § 40.02(46), generally refers to a person who is actively employed by a WRS-covered employer and who qualifies for WRS participation.

¶ 5. Thus, under either of the foregoing calculations, the beneficiary receives all of (or double) the deceased participant's employee-required contributions to the WRS fund, together with interest credited to the participant's employee contribution account through the first of the month in which the beneficiary's application is processed and paid. The beneficiaries of some participants who die while actively employed may be entitled to a higher benefit. Under WIS. STAT. § 40.73(1)(c), when an active employee dies after reaching the minimum age for retirement set forth in WIS. STAT. § 40.23(1)(a), the death benefit payable to a named beneficiary is the *higher* of either the death benefit described in the preceding paragraph or a benefit equal to:

> the present value on the day following the date of death of the life annuity to the beneficiary which would have been payable if the participating employee had been eligible to receive a retirement annuity . . . beginning on the date of death and had elected to receive the annuity in the form of a joint and survivor annuity providing the same amount of annuity to the surviving beneficiary as the reduced amount payable during the participant's lifetime.

Section 40.73(1)(c).[3] The statute does *not* authorize the amount of this "annuity-value" death benefit, if it is the

---

[3] The determination of the "annuity-value" lump sum death benefit under WIS. STAT. § 40.73(1)(c) actually involves two separate calculations (a formula-benefit annuity calculation based on the participant's years of service, final earnings and applicable "multiplier(s)"; and a "money-purchase" annuity calculation based on the participant's total account value at death), with the higher of these two amounts utilized for comparison to the account-value death benefit available under paragraph (a) or (am).

higher amount and thus payable in lieu of the employee-contribution-based benefit, to be increased by any earnings accruing to WRS accounts after the employee's death.[4]

¶ 6. The facts pertaining to Mary Fazio's application for a death benefit are representative and served as the model for the class-action plaintiffs in this suit. Her husband was a WRS participant who died on January 2, 1999, while actively employed as a University of Wisconsin professor. She submitted an application for a death benefit together with a death certificate to the department in November 2000, electing a lump sum payment. The department determined that Fazio was entitled to receive an annuity-value benefit under WIS.

---

[4] The parties have employed the following terminology to distinguish between a death benefit paid under WIS. STAT. § 40.73(1)(a) or (am) and one paid under paragraph (c): They call the former a "death value" benefit because it is based on the deceased participant's account value after the participant's death, while they refer to the latter benefit as a "special" benefit, apparently because it is available only to a limited group of beneficiaries and results in a higher benefit for those beneficiaries. We find this terminology confusing, especially when considered in the context of this case. Fazio received a "special" benefit and complains that it was determined based on her husband's date of death but the amount paid to her remained fixed at the date-of-death value, regardless of how long thereafter the benefit was ultimately paid. The "death value" beneficiaries, on the other hand, received amounts that were *not* based on the dates of participants' deaths. Their benefits were based on the amount accumulated and credited to the deceased participants' accounts through the month before payment of the benefits, meaning that these death benefits continued to increase after the participants' deaths. We will refer to benefits paid under paragraphs (a) and (am) as "account-value" death benefits, and those paid under (c) as "annuity-value" death benefits.

STAT. § 40.73(1)(c) in the amount of $507,395, which it paid to her on December 1, 2000. No interest or earnings accruing on the lump sum death benefit after her husband's death were paid to Fazio, notwithstanding the fact that the entire $507,395 benefit remained on deposit in the WRS fund from the date of her husband's death until payment was made almost two years later. Put another way, the investment returns earned on Fazio's death benefit during that period were retained within the WRS fund, earnings the fund would not have realized had Fazio applied for and received her death benefit shortly after her husband's death.[5]

¶ 7. Fazio sued the department, claiming that the failure to pay her the accrued earnings or any interest on her death benefit after the date of her husband's death constituted an unlawful taking in violation of

---

[5] The appealed order awards Fazio total damages of $219,093, of which $182,494 compensates her for the period between her husband's date of death and one week prior to the date that the $507,395 death benefit was distributed to her. The remainder of the damages ($36,599) represented interest from the latter date through the date of the appealed order (November 3, 2003).

We also note that the department has identified the specific fund or account within the WRS in which Fazio's husband had an interest prior to his death, and which ostensibly received and retained the earnings that accrued on Fazio's death benefit before she applied for and received it. We do not see the need for that level of detail in this opinion given the issues we must decide. Accordingly, we will simply refer generically to the WRS fund, recognizing, however, that it is composed of several accounts and "reserves." *See Wisconsin Professional Police Association, Inc. v. Lightbourn,* 2001 WI 59, ¶ 21–36, 243 Wis. 2d 512, 627 N.W.2d 807.

Wis. Const. art. I, § 13.[6] The case was certified as a class action whose plaintiffs consisted of Fazio and all other "persons having an interest as a beneficiary in a lump sum death benefit paid or payable out of the funds of the Employee Trust Funds pursuant to [Wis. Stat. § ]40.73(1)(c) . . . from and after January 11, 1995." The circuit court granted Fazio's motion for summary judgment and established a formula for calculating the just compensation to be awarded. The department appeals the order for judgment that awarded a total of over $1.5 million to Fazio and the similarly situated plaintiffs.[7]

## ANALYSIS

¶ 8. This appeal is before us on the circuit court's grant of summary judgment, which we review de novo, applying the same methodology and standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment

---

[6] In a previous appeal, we decided that Fazio was not required to pursue an administrative remedy before commencing this action because it would have been futile, given that the department lacks statutory authority to make payments not authorized under Wis. Stat. ch. 40. *Fazio v. Department of Employee Trust Funds*, 2002 WI App 127, ¶ 20, 255 Wis. 2d 801, 645 N.W.2d 618. Fazio also initially alleged an unjust enrichment claim, which she voluntarily dismissed following the remand in the earlier appeal.

[7] We will refer to the plaintiff-respondents, collectively, as Fazio, except where it is necessary to separately identify a group of beneficiaries (the "account-value beneficiaries") who were also awarded damages in the appealed order. The factual circumstances relating to the account-value beneficiaries are described below at ¶ 19 and footnote 14.

as a matter of law. *See id.* Here, the facts are stipulated, and our disposition turns on whether they establish an unconstitutional taking of Fazio's property. This is a question of law, which we also decide de novo. *See Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 17–18, 558 N.W.2d 83 (1997).

*I. The "Annuity-Value" Beneficiaries under*
*WIS. STAT. § 40.73(1)(c)*

■

¶ 9. The first step in a takings analysis is to determine whether a claimant possessed a property interest in the property that the government allegedly took. *Id.* at 18. In this case, we must decide whether Fazio had a property interest in the investment earnings attributable to the amount of her lump sum death benefit while it remained in the WRS fund after her husband's death. She clearly acquired a property interest in her death benefit at some point in time, as evidenced by the fact that the department paid the benefit to her. Thus, the dispositive subsidiary question is: When did Fazio's property interest in her death benefit arise—on the date of her husband's death as she claims, or not until she filed her lump sum death benefit application and all required documentation to the department as the department maintains? We conclude it is the latter.

¶ 10. We begin by noting that Fazio was neither a participant in nor an annuitant under the WRS. The fact that the Wisconsin Supreme Court has concluded that "WRS annuitants have a property interest in the WRS," *id.* at 18, as do actively employed participants in the WRS, *see Wisconsin Professional Police Association, Inc. v. Lightbourn,* 2001 WI 59, ¶ 100, 243 Wis. 2d 512, 627 N.W.2d 807, is thus of no direct assistance to Fazio.

Similarly, annuitants and participants have been held to have a property interest in the earnings of the WRS fund, at least to the extent that they have a contractual right to "the proper use" of those earnings, that is, to have earnings distributed in accordance with WIS. STAT. ch. 40. *See Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d at 19; *State Teachers' Retirement Board v. Giessel*, 12 Wis. 2d 5, 9–10, 106 N.W.2d 301 (1960). These conclusions do not necessarily mean, however, that participants' *beneficiaries* have similar interests in the WRS fund or its earnings. Fazio cites no authority for the proposition that beneficiaries of participants in the WRS, as opposed to participants themselves, possess a property interest in the WRS or its earnings, and we are aware of none.[8]

¶ 11. It is thus necessary for us to analyze, as a question of first impression, whether a beneficiary who receives a lump sum annuity-value death benefit under

---

[8] Fazio relies on *Wisconsin Professional Police Association, Inc. v. Lightbourn*, 2001 WI 59, 243 Wis. 2d 512, 627 N.W.2d 807; *Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 558 N.W.2d 83 (1997); *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 544 N.W.2d 888 (1996); and *State Teachers' Retirement Board v. Giessel*, 12 Wis. 2d 5, 106 N.W.2d 301 (1960) for the proposition that the Wisconsin Supreme Court has concluded that "*beneficiaries* of the [WRS] whose funds were held in interest bearing accounts by [the department] had a protected property right in those funds, including the earnings" (emphasis added). As we have explained above, however, all of the cited cases involved the contractual and property interests of *participants* in or *annuitants* under the WRS or other pension funds, not the interests of a beneficiary who receives a benefit from the fund following a participant's death.

WIS. STAT. § 40.73(1)(c) possesses a recognizable, and thus a constitutionally protected, property interest in the WRS fund or its earnings at any point prior to the department's payment of the death benefit. Although the Wisconsin Constitution prohibits the taking of a person's property for public use without just compensation,[9] the constitution does not itself create property interests:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 558, 544 N.W.2d 888 (1996) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The key attribute of a constitutionally protected property interest is a "legitimate claim of entitlement to it," as opposed to a "unilateral expectation" of it. *Roth*, 408 U.S. at 577.

¶ 12. Our inquiry thus focuses on the basis in state law for Fazio's claim of entitlement to share in the earnings of the WRS fund during the period after her husband's death but before she applied for and the department paid her a death benefit. Fazio points first to WIS. STAT. § 40.73(1)(c), the paragraph under which the benefit she received was determined, which directs the calculation of an annuity-based lump sum benefit determined as of the date of her husband's death. She notes as well that WIS. STAT. § 40.01 explains that the

---

[9] "The property of no person shall be taken for public use without just compensation therefor." WIS. CONST. art. I, § 13.

WRS was created "to aid public employees in protecting themselves *and their beneficiaries* against the financial hardships of old age [and] death" (emphasis added).[10]

¶ 13. Next, Fazio points to the "overwhelming majority" rule that "interest follows principal," which, according to her, means that "if you have a property

---

[10] As a "third source" of her entitlement, Fazio cites a notice given her by the department that informed her as follows: "You may apply immediately for the death benefit, or you may delay application and interest will continue to accrue on the balance of the account"; and "Interest will be paid on any lump sum amount through the end of the month prior to approval of your application." These statements, which the department acknowledges were "inartful[]," appear to refer to death benefits determined under Wis. Stat. § 40.73(1)(a) and (am), which, as we have noted, do include interest credited to a participant's account through "the first day of the month in which the [lump sum] death benefit is approved." We agree with the department, however, that because Fazio did not allege any claims sounding in misrepresentation or estoppel, the wording of the department's form is irrelevant. Any property interest Fazio acquired in her death benefit was created by Wis. Stat. ch. 40, not by the department's paperwork.

Fazio also seeks to rely on a purported "concession" by the department's counsel during argument in the circuit court. Fazio quotes the department's counsel as saying that "[t]he (c) individual, by definition, had private property as of the date of death in a formula calculated under subsection (c)." She fails, however, to explain that the department's counsel's statements are plainly shown by the transcript to be a paraphrase of the circuit court's prior summary judgment ruling. Aside from the questionable propriety of quoting a statement by counsel out of context in order to claim it as a concession, *see* SCR 20:3.3 (Candor Toward the Tribunal), we emphasize again that property interests are created by state law, not by the remarks of an attorney during legal argument, even if the attorney happens to represent a state agency.

right to the principal, you have a property right to any sums earned on that principal." Fazio claims that this principle finds support in Wisconsin law, but she primarily relies on two U.S. Supreme Court decisions (*Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980)) to support her claim of entitlement to WRS earnings accruing on the amount of her death benefit after her husband's death. These cases, however, and others Fazio cites in support of the "interest follows principal" rule, are of no assistance to Fazio or to our present analysis. In each of the two federal cases, the Supreme Court was asked to decide whether a state could constitutionally take or retain the interest accruing on privately deposited funds.[11] Neither case involved any dispute that the underlying principal was "private property." *See Phillips*, 524 U.S. at 164 ("All agree that under Texas law the principal held in IOLTA trust accounts is the 'private property' of the client."); *Webb's*, 449 U.S. at 160–61 ("The principal sum deposited in the registry of the court plainly was private property . . . . We do not understand that the appellees contend otherwise so far as the fund's principal is concerned.").

¶ 14. Here, of course, whether Fazio's death benefit was her "private property" before she applied for it is very much in dispute. We agree with the department that Fazio did *not* acquire a property interest in the death benefit until she applied for it as required under WIS. STAT. § 40.71. The death benefit did not become

---

[11] The takings clause of the Fifth Amendment to the U.S. Constitution is worded similarly to WIS. CONST. art. I, § 13: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.

Fazio's private property until she complied with WIS. STAT. § 40.71(3), which provides as follows:

(3) Whenever any death benefit is payable in a single cash sum, it shall be paid only after receipt by the department of the following:

(a) A copy of the death certificate of the participant or annuitant;

(b) A written application of the beneficiary for the benefit; and

(c) Any additional evidence deemed necessary or desirable by the department.

We conclude that Fazio acquired a "legitimate claim of entitlement," *Roth*, 408 U.S. at 577, to the death benefit "only after receipt by the department" of the items listed in § 40.71(3).

¶ 15. Until the department received Fazio's written application and the proof of her husband's death, it could not determine the "single cash sum" to which Fazio might be entitled. Only then could the department perform the alternative calculations under WIS. STAT. §§ 40.73(1)(a) or (am) and (c) to determine which paragraph would provide the higher lump sum payment. This is so, in part, because the amount payable to Fazio under paragraph (a) or (am) continued to increase each month by the addition of interest credited to her husband's WRS account through "the first day of the month in which the death benefit is approved." Section 40.73(1)(am). Moreover, although the calculation of the "annuity-value" lump sum death benefit under § 40.73(1)(c) utilizes a deceased participant's date of death for calculation purposes, nothing in § 40.73 creates an entitlement in the beneficiary to the lump sum benefit as of that date. Rather, a lump-sum-death-

benefit beneficiary's entitlement is created under WIS. STAT. § 40.71(3), which plainly specifies when the beneficiary becomes entitled to the benefit: "only after receipt by the department" of the required items. *Id.*

¶ 16. Our conclusion that a beneficiary's entitlement to a lump sum death benefit from the WRS does not arise until the requirements of WIS. STAT. § 40.71(3) are satisfied finds additional support in WIS. STAT. § 40.02(8), which defines the term "beneficiary" for purposes of WIS. STAT. ch. 40. The definition excludes a person who, although named by the participant, dies before applying for a benefit: " 'Beneficiary' does not include a person *who dies before filing* with the department either a beneficiary designation applicable to that death benefit or an application for any death benefit payable to the person . . . ." Section 40.02(8)(b) (emphasis added). If a named beneficiary dies before applying for a death benefit (or filing his or her own beneficiary designation), the right to claim a death benefit passes to alternative beneficiaries the deceased participant may have designated, or to the deceased participant's heirs. *See* § 40.02(8)(a)2. We agree with the department's contention that, if a "named beneficiary had a property interest prior to submitting the application it would pass to her heirs upon her death. The only reasonable expectations supported by chapter 40 is that the property right arises after the application is filed . . . ."[12]

---

[12] Our conclusion also finds support in the reasoning of the Ohio Supreme Court in *State ex rel. Horvath v. State Teachers Retirement Board*, 697 N.E.2d 644 (Ohio 1998). The court denied a claim brought in *Horvath* by the surviving spouse of a deceased teacher who contended that the fund administrator's failure to include interest on the deceased teacher's mandatory contributions to the fund when it paid out those contributions to the surviving spouse constituted an unconstitutional taking

¶ 17. In sum, we conclude that Fazio acquired no property interest in her lump sum death benefit until she complied with the requirements of Wis. Stat. § 40.71(3). Accordingly, the department's failure to pay her any interest or earnings received by the WRS on the amount of her death benefit calculated under Wis. Stat. § 40.73(1)(c) between the date of her husband's death and the department's receipt and processing of Fazio's death benefit application did not violate Wis. Const. art. I, § 13.

¶ 18. Fazio claims she is not challenging the constitutionality of the statutes in question, but when we decided the prior appeal in this case, we noted that there appeared to be no dispute that Wis. Stat. ch. 40 does not expressly provide for the payment of interest on Fazio's annuity-value lump sum death benefit, and further that no "section implicitly gives [the department] the authority to pay that interest." *Fazio v. Department of Employee Trust Funds*, 2002 WI App 127, ¶ 13, 255 Wis. 2d 801, 645 N.W.2d 618. We thus concluded that "if Fazio is entitled to interest on the lump-sum benefit, entitlement is not conferred by Wis. Stat. ch. 40, but . . . by Wis. Const. art. I, § 13." *Id.* at ¶ 16. We now conclude that the department did not

under the Ohio and U.S. Constitutions. *Id.* at 648. The Ohio court, as we have done, distinguished *Phillips* and *Webb's* and concluded that "the nature and extent of a contributor's protected property rights in the [State Teachers Retirement System] are determined solely by the statutes that govern the system." *Id.* at 651–52. Because the statutes in question created in the survivor only the right "to have his wife's contributions refunded to him upon her death" and "that right did not include interest accrued on [her] contributions," the beneficiary did not possess "a vested property right to interest accrued on her . . . contributions," and thus "there was no taking under our state or federal constitutions." *Id.* at 652.

violate the takings clause by refusing, in conformity with the provisions of ch. 40, to pay interest or earnings on Fazio's annuity-value lump sum benefit. Our conclusion also means that ch. 40 itself is not unconstitutional for failing to authorize payment of the amounts Fazio seeks.[13]

## II. The "Account-Value" Beneficiaries under § 40.73(1)(am)

¶ 19. In addition to awarding damages to Fazio and other class plaintiffs who received death benefits determined under WIS. STAT. § 40.73(1)(c), the circuit court also awarded damages to certain persons who received account-value benefits under WIS. STAT. § 40.73(1)(am). Our conclusion that Fazio did not possess a recognizable property interest in the lump sum death benefit she received until she had filed a written application for it under WIS. STAT. § 40.71(3) does not dispose of the claims of these account-value beneficiaries. This is because the period for which the account-value plaintiffs claim to have been wrongfully denied interest occurred *after* they had applied for and received an initial death benefit payment from the depart-

---

[13] Because we have concluded that Fazio acquired no recognizable property interest in a lump sum death benefit from the WRS until she applied for it in the manner WIS. STAT. § 40.71(3) directs, we need not decide if the department's failure to award her interest or earnings after the date of her husband's death constituted a "taking" for public use. *Cf. Wisconsin Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 207 Wis. 2d at 20 (noting that "*[i]f* a recognizable property interest exists, we then consider whether the right has been taken" (emphasis added)). Likewise, the question of what remedy is required to effect "just compensation" is not before us.

ment.[14] Thus, if the circuit court properly included the account-value beneficiaries as plaintiffs in this action, a separate takings analysis would be required. We conclude, however, that the circuit court erred in granting the account-value plaintiffs relief in the present action.

---

[14] As the trial court noted, beneficiaries who received account-value death benefits under either Wis. Stat. §§ 40.73(1)(a) or (am) received interest on the deceased participants' accounts from the date of the participants' deaths through the month prior to the department's calculation and payment of the benefits. Paragraphs (a) and (am) expressly so provide. Some beneficiaries, however, became entitled to an additional payment because the account-value death benefit calculated under sub. (1)(am) increased substantially under 1999 Wis. Act 11. After the lifting of an eighteen-month injunction prohibiting the department from implementing Act 11, the department recalculated account-value lump sum benefits under paragraph (am) as of the date of a beneficiary's *original* payment. If that amount was higher than the initial death benefit paid to a beneficiary, the department paid out the difference between the newly calculated benefit under paragraph (am) and the amount it had already paid the beneficiary. This "supplemental" payment, however, did not include any additional interest or earnings for the period after the date of the initial payment.

As we understand the record and the court's order, beneficiaries in this group may have had their initial payments determined under either paragraph (a) or (c), but in all cases, their additional payments were determined and paid under paragraph (am). This means that these beneficiaries received interest or earnings credited to a participant's account after the participant's death through the date of their initial payment, but not thereafter. The account-value plaintiffs included in the appealed order were much fewer in number than the annuity-value plaintiffs like Fazio. In aggregate, their damages totaled less than $200,000, and the individual amounts varied from less than $100 to over $20,000.

855

¶ 20. As we have noted, the order certifying the plaintiff class limited the class to those persons who had "an interest as a beneficiary in a lump sum death *benefit paid or payable* out of the [WRS] *pursuant to Section 40.73(1)(c)*." In its summary judgment ruling, the court analyzed Fazio's circumstances and concluded that she and others similarly situated were entitled to compensation for the period commencing with the date of the participant's death and ending one-week prior to the department's distribution of the benefit to the beneficiary. Following the summary judgment ruling, the parties identified and agreed on the names and amounts due to the annuity-value plaintiffs who were entitled to compensation under the court's ruling, but they disputed whether any account-value beneficiaries were also members of the plaintiff class as certified. They stipulated to an evidentiary hearing on the issue, at the conclusion of which the court would decide whether any beneficiaries beyond those the department had agreed to were entitled to relief in this action.

¶ 21. Notwithstanding the definition of the class quoted above, the circuit court ordered at the conclusion of the hearing that the department must also pay interest to certain account-value beneficiaries who received supplemental payments under Wis. Stat. § 40.73(1)(am) after the lifting of an injunction entered in litigation involving amendments to Wis. Stat. ch. 40 enacted in 1999 Wis. Act 11. (See footnote 14.) The department claims the circuit court erred in so doing. We agree.

¶ 22. Fazio argues that, even though these plaintiffs ultimately received their death benefit payments under Wis. Stat. § 40.73(1)(am), they all "qualified for the payment of a benefit under [paragraph] (c), and since the calculation of the lump sum death benefit for

each of [these] plaintiffs always started with a calculation under [paragraph] (c) and could have been paid under (c) had it been the higher figure," their benefits were thus "payable" under § 40.73(1)(c). We are not persuaded by this argument. We agree instead with the department that the express language of paragraph (c) precludes this argument: "If the death benefit payable to the beneficiary under this paragraph would be less than the amount determined under par. (am) the death benefit shall be payable under par. (am) and this paragraph shall not be applicable to the beneficiary." Section 40.73(1)(c). This language plainly provides that a lump sum benefit is "payable" under only one of the two paragraphs, (am) or (c), whichever calculation provides the higher lump sum benefit. Those who received a benefit under paragraph (am), because it produced the higher amount, did not have a death benefit "payable" under paragraph (c).

¶ 23. Not only does Fazio's argument lack statutory support, we conclude that granting the account-value plaintiffs relief in this action contravenes Wisconsin common law governing class actions. We have previously explained that the prerequisites for bringing a class action are:

> (1) there must be a common or general interest shared by all members of the class; (2) the named parties must fairly represent the interest involved; and (3) it must be impracticable to bring all interested parties before the court. All members of the class need not share all interests, but all must share a common interest.
>
> The test for common interest is whether all members of the purported class desire the same outcome of the suit that the alleged representatives of the class desire.

857

*Mercury Records v. Economic Consultants*, 91 Wis. 2d 482, 490, 283 N.W.2d 613 (Ct. App. 1979).

¶ 24. Here, the common interest of the class, as certified and as represented by Fazio, was the asserted entitlement of beneficiaries who received an annuity-based death benefit under WIS. STAT. § 40.73(1)(c) to interest or earnings from and after the date of a WRS participant's death until the benefit was paid. Beneficiaries who received death benefits under paragraph (am) do not share that common interest because, as the trial court correctly noted, each account-value beneficiary did receive interest accruing after the WRS participant's death through the date of the department's initial determination and payment of a death benefit to the beneficiary. The circuit court concluded on summary judgment that the department had unconstitutionally deprived annuity-value beneficiaries of post-participant-death interest or earnings from the WRS fund. That conclusion did not answer the question whether the department unconstitutionally took private property without just compensation by failing to pay additional interest to beneficiaries who received court-delayed supplemental payments under paragraph (am) for the period between their first and second payments.

¶ 25. The "two-payment" account-value beneficiaries may or may not have a meritorious claim (a question we do not decide), but it is one that is wholly independent of those of Fazio and other annuity-value beneficiaries paid a lump sum death benefit under paragraph (c). We thus conclude that the circuit court erred in awarding damages in this action to these non-members of the plaintiff class.

## CONCLUSION

¶ 26. For the reasons discussed above, we reverse the appealed order and direct that on remand Fazio's complaint be ordered dismissed. We note that, because the account-value beneficiaries were improperly included in the plaintiff class, nothing in our opinion or the disposition we direct should be interpreted as precluding the account-value beneficiaries from pursuing elsewhere their claims grounded on the delayed receipt of the full amount of their death benefits. We express no opinion regarding either the merits of the delayed payment claims or whether any procedural impediments not related to this litigation may exist that would preclude the pursuit of these claims in a different action.

*By the Court.*—Order reversed and cause remanded with directions.