Dale BORMANN, JR. and Dianna K. Bormann,
Plaintiffs-Respondents,†

CITY OF MILWAUKEE, Involuntary Plaintiff,

v.

Kyle C. SOHNS and Progressive
Northern Insurance Company,
Defendants,

GLENS FALLS INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 2005AP3179. Submitted on briefs October 3, 2006.
—Decided December 5, 2006.*

2007 WI App 12

(Also reported in 727 N.W.2d 341.)

† Petition to review filed.

250

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael R. Vescio* of *O'Hagan, Smith & Amundsen, LLC*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Jonathan Cermele* of *Eggert & Cermele, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Glens Falls Insurance Company appeals the grant of summary judgment that declared that Glens Falls's optional excess liability policy, issued to James and Christine Sohns, covered a motor vehicle accident in which the Sohnses' son was negligent. Because the policy wording is such that reasonable insureds would understand that they were not purchasing optional excess automobile liability insurance when they purchased the Glens Falls policy in effect here, we reverse the trial court and remand for further proceedings consistent with this decision.

## I. BACKGROUND.

¶ 2. On June 30, 2001, Dale Bormann, while on duty as a City of Milwaukee police officer, was driving a squad car when he was involved in an accident with Kyle Sohns. Sohns crossed the yellow line separating northbound and southbound lanes of traffic and hit the squad car head on. Bormann was injured, and he and his wife sued Sohns. Christine Sohns, Kyle's mother, had an automobile liability insurance policy issued by Progressive Northern Insurance Company that covered Kyle. Progressive tendered its policy limits, and Progressive and Kyle were dismissed from the case.

¶ 3. Christine and her husband had also purchased an excess liability insurance policy from Glens Falls, which Bormann claimed was liable to him for the

damages arising out of the accident.[1] Both the Bormanns and Glens Falls brought summary judgment motions. The trial court granted the Bormanns summary judgment, construing the policy language to include excess automobile liability insurance. This appeal follows.

## II. ANALYSIS.

¶ 4. We review an order granting summary judgment *de novo,* employing the same methodology as the trial court. *Fazio v. Department of Employee Trust Funds,* 2005 WI App 87, ¶ 8, 280 Wis. 2d 837, 696 N.W.2d 563. Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Here, the facts are undisputed and we thus conduct an independent review of the record. *See id.*

¶ 5. The meaning of an insurance contract is a question of law that we review without deference to the circuit court, but benefiting from its analysis. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65.

¶ 6. "An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme,* 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. The language of the policy is construed as it would be under-

---

[1] Originally, Encompass Insurance Company of America and Encompass Indemnity Company were sued. Later, Glens Falls Insurance Company was substituted in for Encompass.

stood by a reasonable insured, and the reasonable expectations of coverage of an insured should be furthered by the interpretation given. *Frost ex rel. Anderson v. Whitbeck*, 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225. In other words, when we interpret the terms of an insurance policy, we aim to enforce the intent of the parties, and we give words in the policy their common and ordinary meaning so that our construction conforms to the understanding of a reasonable person in the position of the insured. *See State Farm Mut. Auto Ins. Co. v. Langridge*, 2004 WI 113, ¶ 14, 275 Wis. 2d 35, 683 N.W.2d 75. Ambiguities are resolved in favor of coverage. *Frost*, 257 Wis. 2d 80, ¶ 19.

■

¶ 7. When interpreting the language of the policy, we also consider "the purpose or subject matter of the insurance, the situation of the parties, and the circumstances surrounding the making of the contract." *Id.*, ¶ 22.

■

¶ 8. In order to divine the intent of the policy, we first examine the various parts of the eighty-two-page policy issued by Glens Falls. As this was a renewal policy, the first several pages of the policy are devoted to certain changes in the wording of the policy since the previous policy was issued. Next comes the "Renewal Policy Coverage Summary," the functional equivalent of a declarations page. There we are told that the policy is entitled "USP SPECIAL RENEWAL POLICY COVERAGE SUMMARY" (the policy explains earlier that USP stands for "Universal Security Policy"). The coverage summary then lists key identifying information about the policyholders and their agent. After that information, the policy number and the time period the policy is in effect are listed. This is followed by the words "HOME PRO-

TECTION." The coverage summary then lists identifying information regarding the Sohnses' home, such as its address and the home's stated value. It also lists a premium amount of $484 for coverage for the residence. The next page is similar. It is entitled: "BOAT PROTECTION." It describes the boat by make, model, and lists the serial number. It also values the boat and lists a premium amount of $307. There is no mention of an automobile on these pages.

¶ 9. Printed on the bottom of the page containing the words "BOAT PROTECTION" are the words "OPTIONAL EXCESS PROTECTION," followed by the words "(COVERAGE APPLIES ONLY IF A PREMIUM OR LIMIT IS SHOWN)." The next line reads: "COVERAGES LIMITS," and the line following that one reads: "EXCESS LIABILITY APPLIES TO ALL 'COVERED EXPOSURES' AND 'ADDITIONAL COVERED EXPOSURES.' " On the next page, under the excess liability coverage there is a premium stated for the home and the boat. There is none listed for a car. In fact, nowhere in the coverage summary's first four pages is there any mention of an "automobile," although there are many references to "home" and "boat."

¶ 10. Based solely on our review of the summary, we would be inclined to conclude that no excess automobile liability coverage was purchased. This is so because the declarations page, here called the "coverage summary," is " 'generally the portion of an insurance policy to which the insured looks first,' and 'is the most crucial section of the policy for the typical insured.' " *Folkman*, 264 Wis. 2d 617, ¶ 37 (citations omitted).[2] The

---

[2] We acknowledge that a declarations page or summary does not provide a complete picture of coverage under a policy, but

summary or declarations page is crucial because it spells out what is being insured and sets out the premium amounts and the coverage amounts. As a result, if the Sohnses expected to purchase excess automobile liability coverage, one would normally expect the coverage summary to list the make and model of the automobile for which coverage was being provided, particularly, where here, the policy's format has included such information for other covered exposures. Thus, the fact that no car is mentioned is strong proof that no automobile excess liability coverage was contemplated by the Sohnses when they bought their policy. Moreover, the failure of the policy to list a premium for automobile coverage is additional proof that no automobile coverage was contemplated. We would have expected the policy to reflect a premium for the automobile insurance being purchased, particularly where the policy lists a separate premium for the home and the boat. Generally speaking, "a policy may not be construed to bind the insurer to a risk which it did not contemplate and for which it received no premium." *Shelley v. Moir*, 138 Wis. 2d 218, 222, 405 N.W.2d 737 (Ct. App. 1987). The lack of a premium amount for automobile coverage, where other premiums are listed, is persuasive evidence that no coverage was purchased. *See id.*

¶ 11. We also observe that the policy makes no mention of any specific underlying automobile insurance, nor requires the Sohnses to maintain a particular level of underlying automobile liability insurance. Given that the policy covered the Sohnses' home and

must be read together with the policy's limitations and exclusions. *Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, ¶ 11, 240 Wis. 2d 65, 622 N.W.2d 457, *abrogated on other grounds by Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223.

boat but not the car, the absence of any mention of underlying automobile liability insurance suggests that no excess automobile coverage was contemplated.

¶ 12. The Bormanns argue, however, that these omissions are not fatal. They claim that reading the language under the listed "optional excess coverage," coupled with a reading of the endorsements, establishes that automobile excess coverage was purchased, despite the lack of any mention of an automobile in the coverage summary. The Bormanns submit that:

> While there is no question that Glens Falls unilaterally determined—for whatever reason—to allocate the premium to those two categories, that does _not_ mean that payment of the "Optional Excess" premium does _not_ trigger _all_ the coverage set forth in the accompanying Endorsement. To that end, it is worth noting that a "declarations page," or Coverage Summary, is intended to merely provide a summary of coverage, and cannot possibly provide a complete picture of all coverage afforded under a policy. _Dowhower v. Marquez_, 2004 WI App 3, ¶ 20, 268 Wis. 2d 823, 674 N.W.2d 906.

(Italics and underlining in brief.) We disagree.

¶ 13. The more logical interpretation is that Glens Falls did not "unilaterally determine[] . . . to allocate the premiums to those two categories," but did so because the home and boat were the only two excess coverages being purchased. The Bormanns seize on the policy language that reads: "Excess liability applies to all 'covered exposures' and 'additional covered exposures,' " and couple it with the earlier phrase that says "(Coverage applies only if a premium or limit is shown)," to argue that because premiums were paid, the Sohnses purchased not only excess liability coverage for their home and boat, but also for their car, because it is an "additional covered exposure." Stated differently, the

Bormanns read this language to trigger coverage for *any* coverages found in the policy, including those in the endorsement once *any* premium is paid. We are not persuaded. The interpretation given by the Bormanns is unreasonable. The words "additional covered exposures" are not synonymous with "automobile coverage." Indeed, as noted, given the layout and structure of this policy, the failure to mention an automobile or list an automobile premium means no coverage was purchased. The structure of the policy itself thus reveals that the Bormanns' attempt to read automobile coverage into the policy fails because, if intended to be included, such coverage clearly would have been spelled out using the word "automobile," rather than hidden in the text, to be pieced together from two separate phrases that can indirectly be read as providing coverage.

¶ 14. Next, the Bormanns contend that because the coverage summary lists the Wisconsin endorsement for optional excess liability coverage, which discusses automobile insurance coverage at great length, the Sohnses would have construed the policy to include excess automobile liability coverage. Their position is that listing the Wisconsin endorsement under the column reading "General Policy Information" is tantamount to notifying the insureds that excess automobile liability coverage was purchased. Again, we disagree.

¶ 15. The endorsement, entitled "Optional Excess Liability Coverage Endorsement-Wisconsin," is found on page sixty-six of this eighty-two-page policy. The Bormanns acknowledge that the first listed complete sentence in the endorsement reads: "In consideration of *an additional* premium, we will provide the coverage described by the provisions of this endorsement" (emphasis added), but they argue that the payment of any

additional premium will suffice for coverage to occur. Their interpretation is not one a reasonable insured would reach. The policy does not read, "in consideration of *a* premium being paid," but rather, an additional premium for automobile excess coverage must be paid. In a policy which offers multiple different insurance plans, it is unreasonable to conclude that a premium paid for any one plan triggers coverage for all. We note that often insurance policies employ a "modular" structure. *See Continental Cas. Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir. 1990). This means that the policy contains a great many parts, and not all of them apply to every insurance policy, as it depends on the type of insurance purchased. *See id.* That is exactly what occurred here. The Wisconsin endorsement is the type of excess automobile coverage that would have applied had the Sohnses purchased it. However, as we have seen, the Sohnses did not purchase it. Consequently, we conclude that the endorsement provides coverage only when an additional premium for automobile excess liability coverage has been paid. This is a reasonable interpretation and is consistent with the language found in the policy and the endorsement. We interpret insurance policies as a reasonable person in the position of the insured would understand them. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984). Consequently, the contents of the Wisconsin endorsement are irrelevant, and no interpretation of the language contained therein is required.

¶ 16. Finally, the Bormanns argue that the "DO WE KNOW" page found in the insurance policy, which cautions the reader that only specific exposures listed on the coverage summary will be covered under the excess policy, should be completely disregarded because

it does not fall within the definition of an insurance policy found in Wis. Stat. § 344.33(5)(d) (2003–04).[3] We disagree with their interpretation.

¶ 17. First, this matter was not raised below. Indeed, the insurance policy, including the "DO WE KNOW" page, was an exhibit submitted by the Bormanns. Second, we will assume, without deciding, that any additional information besides that listed in Wis. Stat. § 344.33 accompanying a policy, sent by an insurance company to the policy owners, can be utilized in interpreting the policy. As a result, the Sohnses would have been alerted by the contents of the "DO WE KNOW" document that no automobile excess liability coverage was purchased because no automobile is listed.

[11]

¶ 18. In sum, we conclude that the Glens Falls policy is confusing, but not ambiguous, and when read by reasonable insureds, it would have been understood to mean that no excess automobile liability insurance was being provided. Complex or cumbersome policy language does not necessarily render an insurance

---

[3] Wisconsin Stat. § 344.33 provides:

**"Motor vehicle liability policy" defined.**

. . . .

**(5)** Provisions incorporated in policy by law. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

. . . .

(d) The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this chapter constitutes the entire contract between the parties.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

policy ambiguous. *See Sukala v. Heritage Mut. Ins. Co.*, 2000 WI App 266, ¶ 10, 240 Wis. 2d 65, 622 N.W.2d 457, *abrogated on other grounds by Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, 255 Wis. 2d 61, 647 N.W.2d 223. For the reasons stated, the judgment is reversed.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.